William Most (CA # 279100)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
T: (650) 465-5023
williammost@gmail.com

Garret S. DeReus (LA # 35105)*
Andrew D. Bizer (LA # 30396)*
*Admitted *pro hac vice*
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com

*Attorneys for Plaintiffs Stephan Namisnak, Francis Falls, and Mitchell Miraglia*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STEPHAN NAMISNAK, *ET AL.*,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC. and RAISER, LLC,<br><br>Defendant | Case No.: 3:17-cv-06124-RS<br><br>Hearing set for March 8, 2018 at 1:30 pm<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

# I. TABLE OF CONTENTS


**I. TABLE OF CONTENTS……………………………………………………...…..II**

**II. TABLE OF AUTHORITIES……………………………………………...……IV**

**III. INTRODUCTION........................................................................................................ 1**

**IV. FACTS……………………………………………………………………...1**

1. Plaintiffs Filed Suit Because Uber's Transportation System is Not Accessible in New Orleans……………………………………………………………………1

2. Defendants Uber Technologies, Inc. and Raiser, LLC Certified In This Suit That No Other Entities Have an Interest in the Proceeding……………………………….2

3. Defendants Attempt to Enforce an Arbitration Agreement that They Say Mr. Miraglia Signed—but No Defendant Was a Party to that Agreement……………….3

4. Defendants Also Seek to Enforce The Arbitration Agreement Against Mr. Namisnak and Mr. Falls—Even Though Neither of Them Ever Saw It, Signed It, or Agreed to It……………………………………………………………………..4

**V. LAW / ANALYSIS........................................................................................................ 4**

**A. Mr. Namisnak and Mr. Falls Are Not Bound By a Contract That They Have Not Consented To. Additionally, Equitable Estoppel is Not Applicable to the Facts of This Case…**……………………………………………………………………...5

i. It is Well Established That Arbitration Is Contractual by Nature and That an Individual Cannot Be Forced Into Arbitration Without Their Prior Acceptance of an Arbitration Agreement. .................................................................................... 5

ii. Defendants Have Presented No Evidence That Mr. Namisnak or Mr. Falls Consented to or Signed an Arbitration Agreement or That They Knowingly Exploited an Agreement With an Uber-related Entity. ............................................................ 7

iii. Defendants' Argument That Plaintiffs Would "Have to" Agree to An Arbitration Agreement to Use Their Service is Factually Inaccurate.......................................... 10

iv. Defendants Have Not Moved to Dismiss Plaintiffs' Claims for Lack of Standing and, Therefore, This Argument is Not Before the Court. .................................................. 11

**B. Mr. Miraglia Never Entered Into an Arbitration Agreement With Uber Technologies, Inc. or Raiser, LLC and Neither of These Entities Have Standing to Enforce the Arbitration Agreement They Have Attached to Their Motion to Compel Arbitration.** ..........................................................................12

i. Defendants Cannot Invoke the Arbitration Agreement Because they Are Neither a Party to it Nor a Third-Party Beneficiary. ............................................................... 12

ii. Uber Technologies, Inc. and Raiser, LLC Do Not Have Standing to Invoke the Arbitration Agreement As They Are Neither a Party To It Nor a Subsidiary, Parent Company, or Affiliate. ........................................................................................ 13

iii. Uber Technologies, Inc. and Raiser, LLC Do Not Have Standing to Invoke the Arbitration Agreement As They Are Not a Third-Party Beneficiary to the Contract. 16

iv. The Delegation Clause Does Not Bar This Court From Examining The Issue of the *Existence* of a Contract Between the Parties............................................................ 16

**VI. CONCLUSION .......................................................................................................... 18**

## II. TABLE OF AUTHORITIES

**Cases**

*Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.*,
181 F.3d 435 (3d Cir.1999)........ 6

*Brown v. Comcast Corp.*,
2016 WL 9109112 (C.D. Cal. Aug. 12, 2016)........ 7, 11

*Chastain v. Union Sec. Life Ins. Co.*,
502 F. Supp. 2d 1072 (C.D. Cal. 2007) ........ 14, 17

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*,
867 F.3d 1093 (9th Cir. 2017) ........ 10

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ........ 5, 6, 8, 14

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*,
269 F.3d 187 (3d Cir.2001)........ 6

*Gold v. Wolpert*,
876 F.2d 1327 (7th Cir.1989) ........ 17

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ........ 19

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)........ 19

*Int'l Broth. Of Teamsters v. United States*,
431 U.S. 324 (1977)........ 12

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir.1988) ........ 14

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir.2000) ........ 14

*Montoya v. Comcast Corp.*,
2016 WL 5340651 (E.D. Cal. Sept. 23, 2016)........ 8, 9

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ........ 13, 14, 15, 18

*Payne v. Giant Food, Inc.*,
346 F.Supp.2d 15 (D.D.C.2004) .......... 17

*Pickern v. Holiday Quality Foods Inc.*,
293 F.3d 1133 (9th Cir. 2002) .......... 10

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .......... 16

*Schwartz v. Upper Deck Co.*,
183 F.R.D. 672 (S.D.Cal.1999) .......... 17

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) .......... 5

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) .......... 5

**Statutes**

28 C.F.R. § 36.501(a) .......... 13

28 U.S.C. § 455(d)(4) .......... 18, 19

42 U.S.C. § 12188(a)(1) .......... 13

## III. INTRODUCTION

Plaintiffs bring suit because Defendants have failed to make their transportation system in New Orleans, Louisiana accessible to persons who use motorized wheelchairs.

Defendants Uber Technologies, Inc. and Raiser, LLC responded with a Motion to Compel Arbitration. Defendants argue that all Plaintiffs must be compelled to go through binding arbitration, even though:

- No Defendant is a party to the arbitration agreement they cite; and
- Two of three of the Plaintiffs never saw or signed the arbitration agreement, because they never joined Uber.

Plaintiffs ask this Court to deny Defendants motion and thereby affirm a basic proposition of law: generally, people cannot be bound by arbitration contracts they never agreed to.

## IV. FACTS

### 1. Plaintiffs Filed Suit Because Uber's Transportation System is Not Accessible in New Orleans.

Plaintiffs Stephan Namisnak, Francis Falls, and Mitchell Miraglia are residents of New Orleans, Louisiana. *See* Rec. Doc. 1, ¶¶ 1-3. Each uses a motorized wheelchair for mobility that cannot be folded into the trunk of a car. Each is disabled within the meaning of the ADA. Plaintiffs brought this action because Defendants Uber Technologies, Inc. and Raiser, LLC have failed to make their transportation system accessible for persons who use motorized wheelchairs in New Orleans, Louisiana.

Uber operates a transportation system (*id.* at ¶ 6) by which people can use their smartphone to call for a car to transport them (*id* at ¶ 23). In many cities, Uber offers a program called UberWAV, which allows a person with a disability to obtain a driver with a wheelchair-accessible vehicle ("WAV"). *Id.* at ¶ 7.

But Uber does not offer UberWAV in New Orleans, Louisiana. *Id.* at ¶ 9. As a result, persons with disabilities in New Orleans have no ability to call a WAV. *Id.* at ¶ 10. Even if there are New Orleans Uber drivers on the road with WAVs, there is no way for New Orleans users to contact them. *Id.*

Plaintiffs use wheelchairs to get from place to place. *Id.* at ¶ 4. All of them want to use Uber's transportation system (*id.* at ¶ 42), but have been deterred because they know that if they tried, they would not be able to call a WAV (*id.*at ¶ 104). They plan to use Uber if and when it becomes accessible for persons with motorized wheelchairs in New Orleans. *Id.* at ¶ 54.

Mr. Namisnak and Mr. Falls are presently deterred from downloading the Uber application. *Id.* at ¶ 44. Mr. Miraglia previously downloaded the Uber application and sent a message asking if wheelchair accessible service was available. *Id.* at ¶ 45. Uber sent a response message stating that wheelchair accessible service was not accessible. *Id.* at ¶ 46. After learning that Uber does not provide accessible service in New Orleans, Mr. Miraglia deleted the Uber application. *Id.* at ¶ 47.

On Tuesday, October 24, 2017, Uber sent out an email about a free concert it was hosting in New Orleans featuring the band Galantis. The show was held at a secret location; the only way to get to the show was by taking an Uber. But because Uber has no WAVS in New Orleans, Plaintiffs were completely excluded from the free, secret concert. *Id*. at ¶ 87.

**2. Defendants Uber Technologies, Inc. and Raiser, LLC Certified In This Suit That No Other Entities Have an Interest in the Proceeding.**

On October 25, 2017, Plaintiffs filed suit against Uber Technologies, Inc. and Raiser, LLC. Rec. Doc. 1. On November 2, 2017, both Uber Technologies, Inc. and Raiser, LLC certified that there are "no other corporations (including parent corporations) or other entities" that have:

> either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) a nonfinancial interest that could be substantially affected by the

outcome of the proceeding.

Rec. Doc. 12. Uber Technologies, Inc. also certified, pursuant to Fed. R. Civ. P. 7.1, that it is a privately held corporation, is not a subsidiary of any entity, and that no publicly held corporation owns ten percent or more of its stock. *Id*. Raiser, LLC certified that it is a wholly-owned subsidiary of Uber Technologies, Inc. *Id*. Defendants have not filed any supplements or amendments to their November 2, 2017 Certification and disclosure.

**3. Defendants Attempt to Enforce an Arbitration Agreement that They Say Mr. Miraglia Signed—but No Defendant Was a Party to that Agreement.**

On January 23, 2018, Defendants filed a Motion to Compel Arbitration for all three Plaintiffs. *See* Rec. Doc. 26. In their motion, Defendants claim that Mr. Miraglia created an Uber rider account on March 25, 2016. Id. at pp. 8:6—10. Defendants argue that, when Mr. Miraglia created a rider account, he agreed to a set of Terms and Conditions (hereinafter "the Contract") that included a binding arbitration clause. *Id*. at pp. 10:1—22. An examination of the Terms aand Conditions reveals that it purports to form a contract ("the Contract") between "you" (Mr. Miraglia) and "Uber USA, LLC and its subsidiaries and affiliates." *See* Rec. Doc. 26-4, pp. 2. According to their certifications, neither Defendant is a subsidiary of Uber USA, LLC, nor is Uber USA, LLC an interested party in this suit. *See* Rec. Doc. 12.[1]

The Contract also purports to extend its reach to specified certain third-party beneficiaries: "Apple Inc., Google, Inc., Microsoft Corporation, or BlackBerry Limited." *See* Rec. Doc. 26-4, pp. 4. Absent from the list of third-party beneficiaries is either Uber Technologies, Inc. or Raiser,

---

[1] The Contract notes that the mailing address of Uber USA, LLC is 160 Greentree Drive, Suite 101, Dover, DE 19904. *See, e.g.*, Rec. Doc. 26-4, pp. 12, 13. This is across the country from Defendants' San Francisco headquarters.

LLC. *Id*. The Contract notes that the mailing address of Uber USA, LLC is 160 Greentree Drive, Suite 101, Dover, DE 19904. *See, e.g.*, Rec. Doc. 26-4, pp. 12, 13.

**4. Defendants Also Seek to Enforce The Arbitration Agreement Against Mr. Namisnak and Mr. Falls—Even Though Neither of Them Ever Saw It, Signed It, or Agreed to It.**

Defendants also seek to enforce the arbitration agreement against Mr. Namisnak and Mr. Falls. Rec. Doc. 26 at pp. 7 *et seq*. But Defendants present no evidence that either of them signed an agreement with any Uber-related entity. Nor do Defendants present any evidence that Mr. Namisnak or Mr. Falls otherwise assented to an agreement with any Uber-related entity (*e.g.*, by downloading an application). Nor do Defendants present any evidence that Mr. Namisnak or Mr. Falls have "knowingly exploited" an agreement with any Uber-related entity.

Despite the lack of any arbitration agreement with Uber, Defendants argue that Mr. Namisnak and Mr. Falls should be forced into arbitration through a novel theory of "equitable estoppel." Rec. Doc. 26, pp. 14:2.

Now Plaintiffs file this memorandum in opposition to Defendants' motion to compel arbitration. As is shown below, Mr. Namisnak and Mr. Falls are not bound by a contract they have not consented to or signed. Further, equitable estoppel is not applicable to the facts of this case as there is no evidence that Mr. Namisnak and Mr. Falls have "knowingly exploited" a contract with an Uber-related entity. Uber Technologies, Inc. and Raiser, LLC do not have standing to force Mr. Miraglia into arbitration because they are not a subsidiary, affiliate, or third-party beneficiary of Uber USA, LLC. Accordingly, Defendants' Motion to Compel Arbitration should be denied in its entirety.

## V. <u>LAW / ANALYSIS</u>

**A. <u>Mr. Namisnak and Mr. Falls Are Not Bound By a Contract That They Have Not Consented To. Additionally, Equitable Estoppel is Not Applicable to the Facts of This Case.</u>**

As is set forth below, Mr. Namisnak and Mr. Falls are not bound by a contract that they have not consented to. Further, equitable estoppel is not applicable as there is no evidence that Mr. Namisnak and Mr. Falls have "knowingly exploited" a contract with an Uber-related entity.

i. <u>It is Well Established That Arbitration Is Contractual by Nature and That an Individual Cannot Be Forced Into Arbitration Without Their Prior Acceptance of an Arbitration Agreement.</u>

Uber argues that Mr. Namisnak and Mr. Falls should be bound by an arbitration agreement that it concedes they never signed. *See* Rec. Doc. 26, pp. 11:24—25. Instead, Uber argues that Mr. Namisnak and Mr. Falls are obligated to participate in arbitration through a novel theory of "equitable estoppel." *See* Rec. Doc. 26, pp. 14:2—3.

Arbitration is contractual by nature: "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). In the Ninth Circuit there is a "general rule that a nonsignatory is not bound by an arbitration clause". *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103–04 (9th Cir. 2006). Indeed, the Supreme Court has recognized that under the FAA, arbitration is "a matter of consent, not coercion". *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469, 109 S. Ct. 1248, 1250, 103 L. Ed. 2d 488 (1989); *see also, Comer*, 436 F.3d at 1102 ("It follows that Comer cannot be bound to the terms of a contract he didn't sign and is not even entitled to enforce.").

Only in very limited scenarios can a non-signatory be bound to arbitrate a claim. A non-signatory cannot be bound to arbitrate unless it is bound "under traditional principles of contract and agency law" akin to a signatory of the underlying agreement. *Bel–Ray Co., Inc. v. Chemrite*

*(Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir.1999). In *Mundi v. Union Sec. Life Ins. Co.*, the Ninth Circuit stated:

> a nonsignatory may be held to an arbitration clause "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.' " *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir.2001)).
>
> 555 F.3d 1042, 1046 (9th Cir. 2009).

The Ninth Circuit has explained that the "knowing[] exploitation" of an agreement requires more than passive usage of a service or the filing of a lawsuit. In *Comer*, the plaintiff brought an ERISA claim against the operator and the trustee of the ERISA plan. 436 F.3d at 1099—100. That relationship was governed by investment management agreements that contained arbitration clauses governing disputes between Smith Barney and the trustees. *Id.* at 1100. The plaintiff was a nonsignatory to the agreement. *Id.* at 1101. The defendants argued that the plaintiff was attempting to claim the benefit of the contract while simultaneously attempting to avoid the burdens that contract imposes. *Id.* The Ninth Circuit found that the defendant's "knowingly exploitation" argument faced an "insurmountable hurdle" because there was no evidence of such conduct by the plaintiff. *Id.* at 1102. The Court found that the plaintiff did not actively attempt to enforce the terms of the management agreement or otherwise take advantage of the agreement before filing suit. *Id.* The Court also found that the plaintiff did not take advantage of the agreement "by bringing this lawsuit, which he bases entirely on ERISA, and not on the investment management agreements." *Id.* The Court expressly rejected the defendant's attempt to equate the plaintiff's passive participation with knowingly exploitation. *Id.*

In *Brown v. Comcast Corp.*, the plaintiff brought suit against Comcast Corporation, a large cable and internet service provider, alleging violations of the Telephone Consumer Protection Act ("TCPA"). No. EDCV1600264ABSPX, 2016 WL 9109112, at *1 (C.D. Cal. Aug. 12, 2016). The

plaintiff alleged that, from August 2014 to December 2015, he received at least twenty-seven calls to his telephone from the defendant or its agents by prerecorded voice or automated dialing. *Id*. The defendant presented evidence that the plaintiff resided at a residence that received defendant's services. *Id*. Given the plaintiff's usage of defendant's services, the defendant argued that the plaintiff was bound by the arbitration agreement in the Comcast terms of use. *Id*. at *7. The plaintiff confirmed that his number was on the defendant's account, but he maintained that he did not knowingly provided his number to the defendant and that he had never seen or received the defendant's terms of service. *Id*. The Court rejected the defendant's attempt to shoehorn the plaintiff into arbitration, finding that there was no evidence that the plaintiff took an affirmative step to benefit from the service agreement or exploit the benefit from the service agreement. *Id*.

ii. <u>Defendants Have Presented No Evidence That Mr. Namisnak or Mr. Falls Consented to or Signed an Arbitration Agreement or That They Knowingly Exploited an Agreement With an Uber-related Entity.</u>

Defendants have presented no evidence that Mr. Namisnak or Mr. Falls signed an agreement with an Uber-related entity. Defendants have presented no evidence that Mr. Namisnak or Mr. Falls have otherwise assented to an agreement with an Uber-related entity (*i.e.*, by downloading an application). Defendants present zero evidence of a contractual relationship between themselves and Mr. Namisnak and Mr. Falls.

Nor have Defendants have presented evidence that Mr. Namisnak or Mr. Falls have "knowingly exploited" an agreement with an Uber-related entity. Plaintiffs did not knowingly exploit any agreement by bringing this lawsuit, which is based entirely on the ADA, and not on any Terms of Use. *Comer*, 436 F.3d at 1102. Defendants have presented no evidence that Plaintiffs have taken affirmative steps to exploit the Terms of Use of an Uber-related entity.

Indeed, under Defendants' own arbitration agreement, Mr. Namisnak and Mr. Falls are not bound by the agreement merely because they filed suit. The second paragraph states "By accessing or using the Services, you confirm your agreement to be bound by these Terms." *See* Rec. Doc. 26-7, pp. 2. Defendants have presented no evidence that Mr. Namisnak or Mr. Falls have engaged in affirmative steps that are sufficient to constitute the "access or use" of their services under the Terms & Conditions.

In support of their novel equitable estoppel argument, Defendants rely on *Montoya v. Comcast Corp.*, No. 2:15-CV-02573-TLN-DB, 2016 WL 5340651, at *4 (E.D. Cal. Sept. 23, 2016). In *Montoya*, the plaintiffs alleged that at all relevant times they had a legal relationship where the defendant provided services under a contract. However, the plaintiffs argued that, despite the existence of a "legal relationship," they were not bound by the arbitration agreement because they did not physically sign the contract, *Id*. at *4. In assessing the defendant's estoppel argument, the District Court found that the plaintiffs knowingly exploited the agreement <u>and</u> accepted the benefits of the contract. *Id*. at *5. The *Montoya* plaintiffs did everything but sign on the dotted line.

In contrast, Mr. Namisnak and Mr. Falls have not alleged that a contractual relationship exists between themselves and Uber. Defendants have presented no evidence that a "contractual relationship" presently exists between Mr. Namisnak or Mr. Falls and Uber. Mr. Namisnak and Mr. Falls have never hailed a Wheelchair Accessible Vehicle on Defendants' transportation system. Mr. Namisnak and Mr. Falls are not able to benefit from Uber's demand-responsive transportation system—which is the entire point of this litigation. Unlike the plaintiffs in *Montoya*, who did everything but sign on the dotted line, Mr. Namisnak and Mr. Falls are not even <u>able</u> to take advantage of Defendants' services.

In their attempt to justify equitable estoppel, Defendants also refer to a concert that Plaintiffs were not able to attend due to the lack of WAV access on Defendants' transportation system. Defendants argue that it would be "inequitable for Plaintiffs to refuse to sign up for the Uber App, and then claim discrimination because they were allegedly denied its benefits." *See* Rec. Doc. 26, pp. 16:14—15. Plaintiffs have knowledge that Defendant's application does not provide accessible rides. Defendants present no basis for why Plaintiffs refusal to engage in a futile gesture is "inequitable." Must a woman who sees a sign that says "no women" attempt to muscle her way in to have standing to sue? Must an individual in a wheelchair who encounters a step at an inaccessible building try to force his wheelchair up the step to have standing? The courts have said they do not, under the well-established ADA doctrine of deterrence. *See* 42 U.S.C. § 12188(a)(1); 28 C.F.R. § 36.501(a) (same); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.* (*"CREEC"*) 867 F.3d 1093, 1098 (9th Cir. 2017).

If Defendants' theory were adopted, then *any business* could immunize itself from an ADA suit. It could simply adopt a set of "Terms & Conditions" that includes a binding arbitration agreement for any customer that agrees to the terms by performing a transaction. The merchant could then, under the theory of "equitable estoppel," force into arbitration even persons with disabilities who were never able to perform a transaction due to an architectural barrier. This would eviscerate the basic promise of the Americans With Disabilities Act and is contrary to the broad, remedial purpose of the statute.

The Court should reject Defendants' attempt to shoehorn the Plaintiffs into an arbitration agreement when there is zero evidence that Plaintiffs ever signed, accessed, or exploited an agreement with an Uber-related entity.

iii. <u>Defendants' Argument That Plaintiffs Would "Have to" Agree to An Arbitration Agreement to Use Their Service is Factually Inaccurate.</u>

In their motion to compel arbitration, Defendants confidently represent as fact that, before using their services, Plaintiffs would have to download the Uber App, create an account, and agree to the Terms & Conditions that include an arbitration agreement. *See* Rec. Doc. 26, 16:4—6. Defendants' argument is factually inaccurate and demonstrably false.

Defendants' argument crumbles upon basic, common-sense scrutiny. There are a variety of ways in which an individual can utilize Defendants' demand-responsive transportation system without ever downloading the Uber application or agreeing to the Terms & Conditions.[2] These methods include, but are not limited to:

- Taking an Uber trip with a friend or colleague who has an account;
- Taking an Uber trip with a family member who has an account;
- Taking an Uber trip with caretaker or guardian who has an account;
- Having a friend, family member, or caretaker hail an Uber on Plaintiff's behalf;
- Taking an Uber trip through a work account; and
- Borrowing the Smartphone of someone with an Uber account.

There is also no evidence that, on the undetermined future date on-which Mr. Namisnak and Mr. Falls download the Uber App, the Terms & Conditions will still require users to agree to binding arbitration. By the time Uber's demand-responsive transportation system is made accessible, the

---

[2] Defendants may argue that these methods would constitute the "knowing exploiting" of their service, but such a conclusory determination is not justified given the fact-intensive inquiring that is required. *See Brown*, 2016 WL 9109112, at *1 (conducting a fact-intensive inquiry into whether usage of a friend's internet service was an affirmative step to benefit from or exploit a service agreement with the Internet Service Provider).

arbitration provision could be removed from the Terms & Conditions (be it due to internal business decisions, ownership change, public pressure, or regulatory changes). Neither Plaintiffs, Defendants, nor this Court have the ability to determine what the Terms & Conditions will be *in the future*.

Finally, Defendants also argue, based on their reading of *Int'l Broth. Of Teamsters v. United States*, 431 U.S. 324, 368 (1977), that Plaintiffs are estopped into the arbitration agreement because they "may only occupy the litigation position they would have had they used the Uber App after agreeing to Uber's Terms & Conditions." *See* Rec. Doc. 26, pp. 15:26—29. However, this reading of *Teamsters* is erroneous. *Teamsters* says that a nonapplicant who demonstrates injury through deterrence is treated as "analogous to" an applicant who experiences injury. 431 U.S. at 368.

However, "analogous" simply means "susceptible of comparison either in general or in some specific detail"—it does not mean that analogous individuals are literally the same person or assume the other's contractual obligations. *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 31 Jan. 2018. Further, the word "estoppel" does not appear once in the *Teamster* case.

iv. Defendants Have Not Moved to Dismiss Plaintiffs' Claims for Lack of Standing and, Therefore, This Argument is Not Before the Court.

Defendants attempt to challenge Plaintiffs' standing argument through implication. Defendants state that Mr. Namisnak and Mr. Falls "can't have it both ways. Either they get the benefit of being treated as actual Uber App users, or they don't." *See* Rec. Doc. 26, pp. 16:16—17. However, in their "Notice of Motion," defendants merely state that they are moving to "compel arbitration." *See* Rec. Doc. 26, pp. 2:5. Defendants have not filed a motion to dismiss pursuant to Rule 12(b)(1) or 12(b)(6). Accordingly, the question of whether Plaintiffs have standing is not properly before this Court. *See also,* L.R. 7-2(b)(3) ("In the second paragraph, a concise statement

of what relief or Court action the movant seeks"); *compare* Rec. Doc. 26, pp. 2:2—11 ("…this Court should compel arbitration and stay this action pending completion of the arbitration.").

**B. <u>Mr. Miraglia Never Entered Into an Arbitration Agreement With Uber Technologies, Inc. or Raiser, LLC and Neither of These Entities Have Standing to Enforce the Arbitration Agreement They Have Attached to Their Motion to Compel Arbitration.</u>**

As is discussed below, Mr. Miraglia entered into an arbitration agreement with Uber USA, LLC. However, neither Uber Technologies, Inc. or Raiser, LLC are a party to, or beneficiary of, the agreement between Mr. Miraglia and Uber USA, LLC. Accordingly, neither Defendant has standing to enforce the Contract between Mr. Miraglia and Uber USA, LLC.

i. <u>Defendants Cannot Invoke the Arbitration Agreement Because they Are Neither a Party to it Nor a Third-Party Beneficiary.</u>

In their motion, Uber Technologies, Inc. or Raiser, LLC seek to enforce an arbitration agreement that neither of them was signatory to. Defendants claim that they entered into an agreement with Mr. Miraglia. *See* Rec. Doc. 26, pp. 10:19—20 ("Miraglia and Uber agreed that arbitrations would be conducted by the American Arbitration Association"). However, Defendants do not define what they mean by "Uber" in their motion. As is discussed below, an examination of the purported agreement shows that neither Uber Technologies, Inc. nor Raiser, LLC are a party to, or beneficiary of, the purported Contract, which is fatal to their Motion to Compel.

A non-signatory's recourse to an arbitration agreement is governed by California law. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 n. 10 (9th Cir. 2013) (holding that under *Carlisle*, ability for third-party to benefit from arbitration agreement is evaluated based on California law). The Ninth Circuit has confirmed that, in some scenarios, a non-signatory may be able to enforce an arbitration agreement. *Id*. More specifically, "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims

against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir.1988).

In *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1081 (C.D. Cal. 2007) the Central District of California evaluated a case in which the defendant claimed the plaintiff was attempting to artfully plead around an arbitration agreement:

> "Plaintiff cannot artfully plead around an arbitration agreement simply by naming a non-signatory defendant who acted in concert with the signatory. This is not the present circumstance. Plaintiff has not alleged any concerted misconduct and the Court cannot construe Plaintiff's claims in any way to suggest any wrongdoing by the credit card companies."

Similarly, for a third-party to benefit from a contract, "the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) (*citing Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir.2000)).

In the case of *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233–34 (9th Cir. 2013) the Ninth Circuit evaluated whether Best Buy was a third-party beneficiary of an arbitration agreement between a customer and DirecTV. The Ninth Circuit noted that the agreement did not list Best Buy as a third-part beneficiary and that, under the rules of contractual construction, this exclusion militated against concluding that Best Buy was a third-party beneficiary *Id*. at 1234. In holding that Best Buy was not a third-party beneficiary, the Ninth Circuit held that DirecTV "clearly knew how to provide for a third-party beneficiary if it wished to do so". *Id*.

ii. Uber Technologies, Inc. and Raiser, LLC Do Not Have Standing to Invoke the Arbitration Agreement As They Are Neither a Party To It Nor a Subsidiary, Parent Company, or Affiliate.

Given the disclosures and Certifications previously made by Uber Technologies, Inc. and Raiser, LLC in this action, it is clear that they do not have a relationship with Uber USA, LLC

relevant to this lawsuit and cannot invoke the Contract between Mr. Miraglia and Uber USA, LLC.

Under Fed. R. Civ. P. 7.1, every defendant is required to certify if they are a subsidiary of any parent company. Under Local Rule 3-15, a party is required to disclose other persons, associations of person, firms, partnerships, corporations (including parent corporations) or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) a nonfinancial interest that could be substantially affected by the outcome of the proceeding. The rule states that "financial interest" shall have the same meaning assigned by 28 U.S.C. § 455(d)(4). Section 455(d)(4), in turn, provides in relevant part that "financial interest" means "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4).

Here, Mr. Miraglia entered into an agreement with Uber USA, LLC. *See* Rec. Doc. 26-4, pp. 2. Mr. Miraglia <u>did not</u> sign an agreement with Uber Technologies, Inc. or Raiser, LLC. The Contract purports to extend its reach to Uber USA, LLC's "subsidiaries and affiliates." *Id*. Since Uber Technologies, Inc. and Raiser, LLC are not named parties to the Contract, the next question is whether they are a "subsidiary or affiliate" of Uber USA, LLC. The Ninth Circuit has narrowly construed the word affiliate, finding that it is "a company effectively controlled by another or associated with others under common ownership or control." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009)(*citing* Webster's Third New International Dictionary 35 (2002)).

Both Uber Technologies, Inc. and Raiser, LLC certified that there are no other corporations (including parent corporations) or other entities having (1) a financial interest in the subject matter in controversy or in a party to the proceeding; and (2) a non-financial interest that could be substantially affected by the outcome of the proceeding. *See* Rec. Doc. 12. Based on this

Certification and representation to the Court, Uber Technologies, Inc. and Raiser, LLC are clearly not a subsidiary of Uber USA, LLC.

It is also clear that Uber Technologies, Inc. and Raiser, LLC are not "affiliates" of Uber USA, LLC because that would require that Uber Technologies, Inc. and Raiser, LLC be effectively controlled by Uber USA, LLC under common ownership or control. *Satterfield*, 569 F.3d at 955. Both Uber Technologies, Inc. and Raiser, LLC certified that there is no other entity with an "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4). Given this certification, Uber Technologies, Inc. and Raiser, LLC cannot be affiliates of Uber USA, LLC.

Mr. Miraglia readily agrees that he cannot artfully plead around an arbitration agreement simply by naming a non-signatory defendant who acted in concert with the signatory. *Chastain*, 502 F. Supp. 2d at 1081. However, that is not the case here. Given defendant's certification, this Court cannot conclude that Uber Technologies, Inc. and Raiser, LLC have any legal or equitable relationship with Uber USA, LLC. *See* 28 U.S.C. § 455(d)(4). And there is certainly no evidentiary basis for this Court to conclude that there is an "inherently inseparable relationship" between Uber USA, LLC and Uber Technologies, Inc./Raiser, LLC. The mere similarity of their names is not sufficient evidence of an inseparable relationship, especially considering Defendants' relationship with its self-described "independent, third-party transportation providers." *See* Rec. Doc. 26, pp. 7. This Court should readily conclude that no agreement exists between Mr. Miraglia and Uber Technologies, Inc./Raiser, LLC. *See* Rec. Doc. 12.[3]

---

[3] Further, any new arguments or evidence include with Defendants' reply papers are waived. *See Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir.1989) ("It is well settled that new arguments cannot be made for the first time in reply. This goes for new facts too."); *Payne v. Giant Food*,

iii. <u>Uber Technologies, Inc. and Raiser, LLC Do Not Have Standing to Invoke the Arbitration Agreement As They Are Not a Third-Party Beneficiary to the Contract.</u>

Uber Technologies, Inc. and Raiser, LLC cannot invoke the Contract as third-party beneficiaries because they are not listed as third-party beneficiaries in the Contract. Just as in *Murphy*, Uber USA, LLC specified certain third-party beneficiaries: Apple Inc., Google, Inc., Microsoft Corporation, and BlackBerry Limited. Rec. Doc. 26-4, pp. 4. Notably absent from the list of third-part beneficiaries is Uber Technologies, Inc. and Raiser, LLC. Further, it appears that Uber USA, LLC is a corporation that is operating out of Delaware. *See, e.g.*, Rec. Doc. 26-4, pp. 12, 13 (noting on two separate pages that Uber USA's address is 160 Greentree Drive, Suite 101, Dover, DE 19904). Here, customers such as Mr. Miraglia would have believed that they were entering into a contract with Uber USA, LLC—a company with a Delaware address. They could not expect that they would be entering into a contract that would benefit wholly-separate (and unidentified) legal entities that are operating out of California. Mr. Miraglia has not sued Uber USA, LLC or one of the specifically identified third-party beneficiaries. Uber USA, LLC clearly knew how to provide for a third-party beneficiary if it wished to do so. *Murphy*, 724 F.3d at 1234. Accordingly, Uber Technologies, Inc. and Raiser, LLC are not third-party beneficiaries of the Contract and do not have standing to invoke the arbitration provision.

iv. <u>The Delegation Clause Does Not Bar This Court From Examining The Issue of the *Existence* of a Contract Between the Parties.</u>

---

*Inc.*, 346 F.Supp.2d 15, 21 n. 4 (D.D.C.2004) ("These facts were raised for the first time in his reply ... petitioners effort to meet his burden comes too late.") (*citing U.S. v. Wilson*, 240 F.3d 39, 45 (D.C.Cir.2001)); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D.Cal.1999) ("It is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper.") (*citing Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996)).

Defendants might argue that the "delegation clause" (delegating arbitrability questions to the arbitrator) in the Contract between Uber USA, LLC and Mr. Miraglia bars this Court from examining whether Uber Technologies, Inc. and Raiser, LLC have standing to invoke the Contract. However, under established jurisprudence, a delegation clause does not bind parties who have never entered into an agreement in the first instance. Accordingly, this Court must examine the issue of whether Uber Technologies, Inc. and Raiser, LLC have standing to invoke the arbitration agreement between Mr. Miraglia and Uber USA, LLC.

A delegation clause does not bar the Court from examining whether the parties entered into an agreement with a delegation clause. The Supreme Court has stated that, "[t]he question whether parties have submitted a particular dispute to arbitration ... is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (internal citations, quotation marks, and modifications omitted). Before determining that a delegation clause requires referral to an arbiter, the Court must determine that "the parties clearly and unmistakably" have entered into an agreement that includes a delegation clause. However, a delegation clause does not bind parties who have never entered into an agreement in the first instance. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

Here, Mr. Miraglia disputes that there is *any* contract between himself and Uber Technologies, Inc. and Raiser, LLC. As such, the presumption in favor of arbitrability does not apply. While Mr. Miraglia has admittedly entered into a Contract with Uber USA, LLC, he has not entered into a contract with either Uber Technologies, Inc. or Raiser, LLC and, based on their Certification to the Court, neither of these entities have a relevant relationship with Uber USA,

LLC. The delegation clause does not help Defendants because Defendants are not parties to the agreement in the first place. Uber Technologies, Inc. and Raiser, LLC have no more right to enforce the Contract than Burger King Corporation or Lyft, Inc. Defendants cannot invoke an arbitration provision when they are not a party to, or beneficiary of, the Contract at issue.

## VI. CONCLUSION

As is discussed above, Mr. Namisnak and Mr. Falls are not obligated to participate in binding arbitration with Defendants because Mr. Namisnak and Mr. Falls never signed, or consented to, an arbitration agreement with an Uber-related entity. Defendants' attempt to invoke equitable estoppel faces an "insurmountable hurdle" because there is no evidence that Plaintiffs knowingly exploited Defendants' services. Finally, Uber Technologies, Inc. and Raiser, LLC do not have standing to enforce the arbitration agreement between Uber USA, LLC and Mr. Miraglia as neither defendant is a party to the agreement or is a subsidiary, parent company, or affiliate of Uber USA, LLC. Accordingly, Defendants' Motion to Compel Arbitration should be denied.

Respectfully Submitted,

/s/ Garret S. DeReus
**GARRET S. DEREUS**

BIZER & DEREUS
Attorneys for plaintiff
Garret S. DeReus (LA # 35105)
*Admitted pro hac vice*
gdereus@bizerlaw.com
Andrew D. Bizer (LA #30396)
*Admitted pro hac vice*
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
*Attorneys for Plaintiffs*

/s/ William Most .
**WILLIAM MOST**
AQUA TERRA AERIS LAW GROUP
William Brock Most (CA# 279100)
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
T: (650) 465-5023
williammost@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2018, a copy of *Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/ Garret S. DeReus
**GARRET S. DEREUS**