MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez (*pro hac vice*)
200 Biscayne Boulevard, Suite 5300
Miami, FL 33131
T:  305.415.3000
F:  305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (*pro hac vice*)
Clara Kollm (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T:  202.739.3000
F:  202.739.3001
stephanie.schuster@morganlewis.com
clara.kollm@morganlewis.com

Kathy H. Gao (CA Bar No. 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
T: 213.612.2500
F: 213.612.2501
kathy.gao@morganlewis.com

*Attorneys for Defendants*
*Uber Technologies, Inc. & Rasier, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| STEPHAN NAMISNAK, *et al.*,<br><br>                    Plaintiffs,<br><br>            v.<br><br>UBER TECHNOLOGIES, INC. and<br>RASIER, LLC,<br><br>                    Defendants. | Case No. 3:17-cv-06124-RS<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Date: March 8, 2018<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

   I.    MIRAGLIA MUST ARBITRATE ....................................................................... 2

   II.   NAMISNAK AND FALLS MUST ARBITRATE............................................... 4

CONCLUSION .............................................................................................................. 7

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Applebaum v. AutoNation, Inc.*,

5
   No. 13-1927, 2014 WL 1396585 (C.D. Cal. Apr. 8, 2014) ......................................................2

6

*Arthur Anderson LLP v. Carlisle*,
   556 U.S. 624 (2009) ...........................................................................................................4

7

8

*Azpeita v. Tesoro Refining & Mktg.*,
   No. 17-0123, 2017 WL 3115168 (N.D. Cal. July 21, 2017)..................................................2

9

10

*Comer v Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006)..............................................................................................7

11

*Dylag v. W. Las Vegas Surgery Ctr.*,
   — F. App'x —, 2017 WL 6349284 (9th Cir. Dec. 13, 2017)................................................4

12

13

*EEOC v. Creative Networks, LLC*,
   No. 05-3032, 2008 WL 5225807 (D. Ariz. Dec. 15, 2008) ..................................................3

14

15

*Goldman v. KPMG LLP*,
   92 Cal. Rptr. 3d 534 (Ct. App. 2009) ...................................................................................5

16

*Gomez v. MasTec, Inc.*,
   264 F. App'x 517 (9th Cir. 2008) .........................................................................................3

17

18

*In re Ford Tailgate Litig.*,
   No. 11-2953, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ...............................................5

19

20

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977)........................................................................................................5, 6

21

*JSM Tuscany, LLC v. Superior Court*,
   123 Cal. Rptr. 3d 429 (Ct. App. 2011)...........................................................................4, 5, 6, 7

22

23

*Kaselitz v. hiSoft Tech. Int'l*,
   No. 12-5760, 2013 WL 622382 (N.D. Cal. Feb. 15, 2013) ...............................................2, 3

24

25

*Kindred Nursing Ctrs. v. Clark*,
   137 S. Ct. 1421 (2017) .........................................................................................................7

26

*Landover Corp. v. Bellevue Master LLC*,
   252 F. App'x 800 (9th Cir. 2007) ........................................................................................3

27

28

iii

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................6

*Nevarez v. Forty Niners Football Co.*,
    No. 16-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ...................................3

*Pickern v. Holiday Quality Foods, Inc.*,
    293 F.3d 1133 (9th Cir. 2002).............................................................................5, 6

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)...............................................................................2, 3

*Tamsco Props, LLC v. Langemeier*,
    No. 09-3086, 2013 WL 246782 (E.D. Cal. Jan. 22, 2013) .......................................5

STATUTES

9 U.S.C. § 4 ..................................................................................................................5

Cal. Corp. Code § 150..................................................................................................2

Cal. Corp. Code § 175..................................................................................................3

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (10th ed. 2014) ................................................................3

Local Rule 3-15(a)(1)...................................................................................................3

1

## <u>INTRODUCTION</u>

2         This dispute must be resolved in arbitration.  In its opening brief, Uber showed that

3   (1) Miraglia must arbitrate under the 2016 Terms & Conditions, to which he affirmatively

4   assented; and (2) Namisnak and Falls must arbitrate under the 2017 Terms & Conditions as a

5   matter of equitable estoppel, since they claim they are entitled to standing equal to that of actual

6   Uber App users.  Plaintiffs fail to refute either point.

7         *First*, Miraglia concedes that he agreed to arbitrate his claims, a concession necessarily

8   made in the complaint by Miraglia's claim that he rescinded his agreement.  Abandoning the

9   rescission argument, Miraglia insists he still doesn't have to arbitrate because, he asserts, Uber is

10  not a party to the 2016 Terms & Conditions.  Even more, Miraglia asserts that Uber has no right

11  to respond to that argument.  Miraglia cannot avoid arbitration by sandbagging—raising one

12  defense to arbitration in his complaint and raising an entirely different (and meritless) defense to

13  arbitration in his opposition brief.  As a matter of fact and law, Uber is a party to the arbitration

14  agreement that Miragalia now concedes is binding on him.

15        *Second*, Namisnak and Falls claim that equitable estoppel does not apply as a matter of

16  *federal common law*.  Problem is, whether Namisnak and Falls are equitably estopped to avoid

17  the arbitration agreement in the 2017 Terms & Conditions is a question of *state law*.  California

18  law governs here, as both the law of the forum and the law which governs the 2017 Terms &

19  Conditions.  And as a matter of California law, Plaintiffs may not embrace the Terms &

20  Conditions in their attempt to plausibly allege standing under the deterrent effect doctrine without

21  also embracing the arbitration agreement within.  Equitable estoppel prevents that unfair result.

22        Plaintiffs do not otherwise dispute that their claims must be arbitrated.  They don't dispute

23  that the arbitration agreements are enforceable, or that each version contains a valid delegation

24  clause, or that their claims fall within the broad scope of the agreements (delegation clauses

25  aside).  Uber's motion should be granted and this litigation stayed pending arbitration.

26

27

28

1

## ARGUMENT

### I.  MIRAGLIA MUST ARBITRATE.

Mirgalia "admittedly" agreed to the 2016 Terms & Conditions, including the arbitration agreement.  Pl. Br. 17.  He doesn't dispute that his claims fall within the broad scope of the arbitration agreement.  *See* Uber Br. 12.  And he no longer disputes the validity or enforceability of his agreement; in the complaint, Miraglia claimed he "rescinded" the agreement by deleting the Uber App (Compl. ¶ 49).  That argument always was meritless, and apparently for that reason, Miraglia abandons his rescission argument in his brief by failing to mention or defend it.  *See Azpeita v. Tesoro Refining & Mktg.*, No. 17-0123, 2017 WL 3115168, at *10 (N.D. Cal. July 21, 2017) ("The Court will accordingly take Plaintiffs' silence as a concession."); Uber Br. 7, 11 n.3.

In its place, Miraglia offers a new justification (not alleged in the complaint) for having ignored his contractual obligation to arbitrate: he says his agreement was with Uber USA, LLC, and not the defendants he sued—Uber Technologies, Inc. and Rasier, LLC.  Pl. Br. 12.  Miraglia is wrong.  On its face, the agreement is between "Uber" and Miraglia.  Barajas Decl. Ex. 1 (ECF No. 26-4) § 1.  "Uber" is a defined term that means "Uber USA, LLC *and its subsidiaries and affiliates*."  *Id.* (emphasis added).  Thus, each of Uber USA's subsidiaries and affiliates is a party to the agreement.  *See Kaselitz v. hiSoft Tech. Int'l*, No. 12-5760, 2013 WL 622382, at *6–7 (N.D. Cal. Feb. 15, 2013) (parties to arbitration agreement between plaintiff and "Company," where "Company" is defined as a named entity and "its subsidiaries, affiliates, successors or assigns," include named entity's affiliates); *Applebaum v. AutoNation, Inc.*, No. 13-1927, 2014 WL 1396585, at *7 (C.D. Cal. Apr. 8, 2014) (same).

Uber Technologies and Rasier are affiliates of Uber USA.  "Affiliate" is a term that "carries its own, independent legal significance."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).  An entity's "affiliates" are not just the companies the entity controls, as Miraglia contends.  *See* Pl. Br. 15.  Under California law, an entity's "affiliates" also include its parents and siblings.[1]  Cal. Corp. Code § 150 (Company A is Company B's "affiliate" if, directly or indirectly, Company A "controls, is controlled by or is under common control with"

---

[1]  California law governs the 2016 Terms & Conditions.  Barajas Decl. Ex. 1 § 7.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

Case No. 3:17-cv-02664-RS

1   Company B); Cal. Corp. Code § 175 (parents are de facto "affiliates" of their subsidiaries); *see*

2   *Kaselitz*, 2013 WL 622382, at *6 (parent is "affiliate" of subsidiary named in arbitration

3   agreement's definition of "Company"); *accord* BLACK'S LAW DICTIONARY 69 (10th ed. 2014)

4   ("affiliate" means "a subsidiary, parent, or sibling corporation").[2]

5         Both Uber USA and Rasier are wholly owned subsidiaries of Uber Technologies.

6   Declaration of Sarah Goomar ¶¶ 4–5.  In other words, Rasier is Uber USA's sibling (affiliate),

7   and Uber Technologies is Uber USA's parent (affiliate).  Therefore, both defendants are parties to

8   2016 Terms & Conditions as a matter of fact and law.   Miraglia recognizes as much in his

9   complaint—he alleges that he rescinded his agreement "with Uber," Compl. ¶ 49, and he defines

10  "Uber" as "Defendants Uber Technologies, Inc. and Rasier, LLC," *id.* ¶ 5.[3]

11        Miraglia gives it one more shot.  Pointing to Defendants' Certificate of Interested Persons

12  (ECF No. 12), Miraglia apparently contends that Local Rule 3-15 requires an entity-party to

13  identify all of its affiliates.  Pl. Br. 15.  Miraglia is mistaken.  Only affiliates with either a

14  "financial interest of any kind in the subject matter in controversy or in a party to the

15  proceeding," or "any other kind of interest that could be substantially affected by the outcome of

16  the proceeding" must be disclosed.  Local Rule 3-15(a)(1).  Despite casually asserting otherwise,

17  Miraglia fails to dig in and explain how Uber USA fits either category.  Uber does not believe it

18  does, but if the Court takes a different view, Uber is happy to amend.

19                            *        *        *

20        Miraglia has no valid defense to arbitration.  Both defendants are parties to the arbitration

21  _____

22  [2]     Dictionary definitions are in accord.  "The plain and ordinary meaning of 'affiliate' … [is]
    'a company effectively controlled by another *or associated with others under common ownership*

23  *or control*.'"  *Satterfield*, 569 F.3d at 955 (emphasis added) (quoting WEBSTER'S THIRD NEW
    INT'L DICTIONARY 35 (2002)); *see Gomez v. MasTec, Inc.*, 264 F. App'x 517, 519 (9th Cir. 2008)

24  (per dictionaries, siblings are "affiliates"); *Landover Corp. v. Bellevue Master LLC*, 252 F. App'x
    800, 802 (9th Cir. 2007) (per dictionaries, parents are "affiliates").

25  [3]     After shifting positions both (a) on his defense to arbitration (*see* Compl. ¶ 49), and (b) as

26  to whether defendants are parties to the agreement (*see id.* ¶¶ 5, 49), Miraglia claims "gotcha"
    and baldly asserts that Uber has somehow waived any response to his *new* arguments.  *See* Pl.

27  Br. 15 n.3.  That's not how it works.  In reply, Uber may refute arguments and factual assertions
    Plaintiffs make for the first time in an opposition brief.  *See, e.g.*, *Nevarez v. Forty Niners*

28  *Football Co.*, No. 16-07013, 2017 WL 3492110, at *4 n.2 (N.D. Cal. Aug. 15, 2017); *EEOC v.*
    *Creative Networks, LLC*, No. 05-3032, 2008 WL 5225807, at *2 (D. Ariz. Dec. 15, 2008).

1 agreement that Miraglia concedes he agreed to.  He does not question the arbitration agreement's

2 validity or enforceability, and he does not dispute that his claims fall within the arbitration

3 agreement's broad scope.  Therefore, Miraglia must arbitrate his claims.

4 **II. NAMISNAK AND FALLS MUST ARBITRATE.**

5   Plaintiffs have never used the Uber App to request a ride.  Namisnak and Falls haven't

6 even downloaded it; nor do they allege that they have the equipment or payment method

7 necessary to do so.  Even so, Plaintiffs allege they have standing under the deterrent effect

8 doctrine.  If that doctrine applies, it would permit Plaintiffs to stand in the shoes of actual Uber

9 App users, a key point Plaintiffs do not dispute.  Use of the Uber App is governed by Uber's

10 Terms & Conditions, including its arbitration agreement, another key point Plaintiffs do not

11 dispute.  Because actual Uber App users would have to resolve the claims Plaintiffs raise in

12 arbitration, Plaintiffs are equitably estopped to litigate those claims in court.  *See* Uber Br. 8–10.

13   Citing federal decisions applying federal common law, Plaintiffs' principal response is

14 that their claims are "based entirely on the ADA, and not on any Terms of Use."  Pl. Br. 7 (citing

15 *Comer v Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006)).  Plaintiffs miss that federal common

16 law is helpful only insofar as it is consistent with applicable state law, which controls whether a

17 litigant is equitably estopped to avoid arbitration.  *Arthur Anderson LLP v. Carlisle*, 556 U.S.

18 624, 630–31 (2009); *see Dylag v. W. Las Vegas Surgery Ctr.*, — F. App'x —, 2017 WL 6349284,

19 at \*1 & n.2 (9th Cir. Dec. 13, 2017) ("Following the U.S. Supreme Court's decision in *Arthur*

20 *Anderson* … , courts must apply *state* law in determining the applicability of these [equitable

21 estoppel] principles. … Prior to *Arthur Anderson*, courts applied federal common law in

22 addressing arbitration provisions governed by the FAA.") (emphasis in original).

23   Under California law (which Plaintiffs completely ignore), equitable estoppel applies to

24 more than claims based on the agreement (like a breach of contract claim asserted by a third-party

25 beneficiary); the "doctrine extends to claims that are *dependent upon* or *inextricably intertwined*

26 *with*" the agreement as well.  *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 445

27 (Ct. App. 2011) (emphases added); *see* Uber Br. 8.  The touchstone of equitable estoppel is

28 whether the nonsignatory plaintiff is pursuing "a legal theory which entitles that nonsignatory to

4

1    'stand in the shoes' of a party to the agreement." *JSM Tuscany*, 123 Cal. Rptr. 3d at 444 n.20.

2    This is determined by "analyz[ing] the causes of action alleged in the complaint." *Id.* at 445.

3         There can be little doubt that Plaintiffs seek to "stand in the shoes of a party to the" Terms

4    & Conditions (actual Uber App users)—otherwise, they lack standing.  As Uber explained, to

5    plausibly allege deterrence, Plaintiffs *must* plausibly allege that they can and will go through the

6    motions of downloading the Uber App, creating an Uber account, agreeing to the Terms &

7    Conditions, and requesting a ride via the Uber App.  Uber Br. 9–10.  Plaintiffs fail to explain how

8    they could otherwise have standing and so have conceded the point.[4]  *See In re Ford Tailgate*

9    *Litig.*, No. 11-2953, 2015 WL 7571772, at *8 (N.D. Cal. Nov. 25, 2015) (Seeborg, J.).

10        Plaintiffs cannot simultaneously embrace the Terms & Conditions for their benefit

11   (standing), and ignore a provision they don't like (arbitration).  Equitable estoppel keeps it fair:

12   Plaintiffs may have the benefits of the Terms & Conditions, but only if they accept the burdens

13   too.  *See, e.g.*, *Tamsco Props, LLC v. Langemeier*, No. 09-3086, 2013 WL 246782, at *5–7 (E.D.

14   Cal. Jan. 22, 2013) (applying California law); *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543

15   (Ct. App. 2009) (as a matter of fairness, equitable estoppel prevents a plaintiff from "hav[ing] it

16   both ways").  Thus, if they have standing, Plaintiffs are equitably estopped to avoid the arbitration

17   agreement in the Terms & Condition.

18        The Supreme Court's decision in *International Brotherhood of Teamsters v. United*

19   *States*, 431 U.S. 324 (1977), which is where the deterrent effect doctrine comes from, *see Pickern*

20   *v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136–37 (9th Cir. 2002), confirms that Plaintiffs

21   must arbitrate.  In *Teamsters*, the Court held that an individual who would have applied for a job

22   but for the employer's alleged discriminatory practices need not engage in the "futile gesture" of

23   submitting an application; instead, a deterred nonapplicant gets to stand in the shoes of one "who

24   goes through the motions of submitting an application.'"  *Pickern*, 293 F.3d at 1136 (quoting

25   *Teamsters*, 431 U.S. at 865–66); *accord Teamsters*, 431 U.S. at 364 ("Individual nonapplicants

26   ─────────────────

27   [4]    Plaintiffs erroneously claim that standing "is not properly before the Court." Pl. Br. 11.
     Standing always is before the court, for it always is a non-waivable threshold issue, even for
     motions to compel arbitration.  *See* 9 U.S.C. § 4.  If the Court determines that Plaintiffs lack

28   standing—now or any stage of this litigation—it may, and indeed must, dismiss the complaint.

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION

1    must be given an opportunity to undertake their difficult task of proving *that they should be*

2    *treated as applicants*.") (emphasis added); *id.* at 368 (a deterred individual "is in a position

3    *analogous to that of an applicant*") (emphasis added).

4          Plaintiffs brush off *Teamsters*, arguing that "the word 'estoppel' does not appear once in

5    the *Teamster* [sic] case." Pl. Br. 11. That is a *non-sequitur*. *Teamsters* isn't an estoppel case.

6    *Teamsters* is the progenitor of the deterrence-based standing Plaintiffs seek to invoke in this

7    litigation; "Congress specifically intended that *Teamsters'* 'futile gesture' reasoning be applied to

8    ADA claims." *Pickern*, 293 F.3d at 1136. *Teamsters* confirms that Plaintiffs are pursuing "a

9    legal theory which entitles" them "to 'stand in the shoes' of a party to" the Terms & Conditions—

10   an actual Uber App user. *JSM Tuscany*, 123 Cal. Rptr. 3d at 444 n.20; *see Teamsters*, 431 U.S. at

11   364 (deterrence plaintiffs are "treated as" plaintiffs who were actually injured). Uber's

12   unconverted evidence shows that actual Uber App users must agree to Uber's Terms &

13   Conditions, including the arbitration agreement. Declaration of Jose "Tony" Dieppa (ECF

14   No. 26-1) ¶¶ 4, 11; *see* Uber Br. 10.

15         Plaintiffs' unalleged speculation that they may, by traveling with a companion, obtain

16   rides from independent, third-party transportation providers who use the Uber App to seek and

17   accept ride requests "without ever downloading the Uber application or agreeing to the Terms &

18   Conditions," Pl. Br. 10, doesn't help them. First, that argument is foreclosed by Plaintiffs' own

19   allegations. Plaintiffs claim they are deterred from using the Uber App *themselves*. They invoke

20   the deterrent effect doctrine based on allegations that they "desire to *use the Uber Application*,"

21   Compl. ¶ 56 (emphasis added), and that they "plan to and will attempt to *use the Uber*

22   *Application* … in the future," *id.* ¶ 54 (emphasis added); *see id.* ¶ 44 (alleging Namisnak and Falls

23   "are presently deterred from downloading the Uber application"). Second, as Plaintiffs elsewhere

24   admit, *any* use of the Uber App—directly or by proxy—is governed by the Terms & Conditions.

25   Pl. Br. 8. Finally, the speculative, hypothetical scenario that Plaintiffs may someday hitch a ride

26   with a friend who has an Uber account—even if it were alleged in the complaint—could not

27   possibly give Plaintiffs standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2

28   (1992) ("some day" intentions are insufficient to establish standing to sue for injunctive relief).

6

1
          \*       \*       \*

2         If Plaintiffs have standing, they get to stand in the shoes of actual Uber App users;

3  equitable estoppel prevents them from standing in bigger or different shoes.  Plaintiffs must

4  arbitrate their claims because actual Uber App users must arbitrate the same claims.  There is

5  nothing unfair about this result, for Plaintiffs "decided the theories on which to sue." *JSM*

6  *Tuscany*, 123 Cal. Rptr. 3d at 442.  It doesn't mean Plaintiffs cannot assert their claims; it means

7  they must assert them *in arbitration.  See, e.g.*, *Comer*, 436 F.3d at 1101 n.5 ("[A]n arbitration

8  clause merely determines where, not whether, a claim will be heard.").  Plaintiffs' view that

9  applying equitable estoppel would "immunize" Uber from ADA claims, Pl. Br. 7, betrays the

10  very hostility to arbitration that the FAA forbids.  *See Kindred Nursing Ctrs. v. Clark*, 137 S. Ct.

11  1421, 1427–28 (2017).

12
## CONCLUSION

13        The Court should enter an order compelling arbitration and staying this action until the

14  arbitration has concluded.

15                                       Respectfully submitted,

16  Dated:   February 20, 2018               MORGAN, LEWIS & BOCKIUS LLP

17                                   By: s/ Anne Marie Estevez

18                                     Anne Marie Estevez

19                                     Stephanie Schuster
                                     Clara Kollm

20                                     Kathy H. Gao

21                                   *Attorneys for Defendants*

22

23

24

25

26

27

28