UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHAN NAMISNAK, et al.,

          Plaintiffs,

    v.

UBER TECHNOLOGIES, INC., et al.,

          Defendants.

Case No. 17-cv-06124-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION**

## I. INTRODUCTION

Defendants Uber Technologies Inc. and Raiser, LLC (collectively "Uber") move to compel arbitration of all claims asserted by plaintiffs Stephan Namisnak, Francis Falls, and Mitchell Miraglia. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for April 19, 2018, is vacated. For the reasons that follow, the motion is granted as to claims asserted by Miraglia and denied as to claims asserted by Namisnak and Falls.

## II. BACKGROUND

Namisnak, Falls, and Miraglia are persons with disabilities who live in New Orleans, Louisiana. As a result of their physical limitations, they are dependent on electric wheelchairs for mobility. One service they cannot utilize is Uber's ride-sharing service, which allows mobile phone app users to call a car to get from one place to another. Because the Uber App in New Orleans does not provide an option for riders to call a wheelchair-accessible vehicle, plaintiffs are

United States District Court
Northern District of California

1  unable to use the service. Accordingly, plaintiffs allege, Uber has violated its obligations under the

2  Americans with Disabilities Act ("ADA"), the California Disabled Persons Act ("CDPA"), and

3  the California Unfair Competition law ("UCL").

4  When customers sign up to use Uber's services, they must first create an account using the

5  Uber App. The app user's registration page displays the phrase, "by creating an uber account, you

6  agree to our terms & conditions and privacy policy," which is hyperlinked so the registrant may

7  view the agreement. Creating an account requires the customer to accept Uber's terms and

8  conditions, including a mandatory arbitration provision.

9  In 2016, Miraglia used a smartphone to access the Uber App and create a rider account. As

10  part of the registration process, as described above, Miraglia was required to agree to Uber's terms

11  and conditions and privacy policy. Uber asserts that Miraglia is bound by the terms of that

12  agreement and must submit his claims to arbitration pursuant to its arbitration provision.

13  Falls and Namisnak never downloaded the Uber App or created an Uber account. As a

14  consequence, neither plaintiff manifested agreement to Uber's terms and conditions or had the

15  opportunity to review any provisions contained therein. Nonetheless, Uber argues that because

16  plaintiffs rely upon Uber's terms and conditions in bringing this action, they are equitably

17  estopped from challenging the agreement's arbitration requirement.

18  **III. LEGAL STANDARD**

19  Uber's terms and conditions agreement is "a contract evidencing a transaction involving

20  commerce" subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2; *Chiron Corp. v. Ortho

21  Diagnostic Sys.*, *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "The FAA provides that any arbitration

22  agreement within its scope 'shall be valid, irrevocable, and enforceable,' . . . and permits a party

23  'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court

24  for an order compelling arbitration in the manner provided for in the agreement." *Chiron*, 207

25  F.3d at 1130 (quoting 9 U.S.C. § 4) (second omission in original). The FAA "leaves no place for

26  the exercise of discretion by a district court, but instead mandates that district courts shall direct

27  the parties to proceed to arbitration on issues as to which an arbitration agreement has been

28

signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). The role of a district court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130 (internal citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

## IV. DISCUSSION

"Before a party to a lawsuit can be ordered to arbitrate . . . there should be an express, unequivocal agreement to that effect. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (internal quotations omitted). In deciding whether there is a genuine issue of fact concerning formation of an agreement, the party opposing arbitration shall receive "the benefit of all reasonable doubts and inferences." *Id.* (internal quotations omitted). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, mutual assent is the key to contract formation. *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (Ct. App. 1999). In the context of an electronic consumer transaction, the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of a merchant's terms of service agreement. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014) ("We agree with the district court that Barnes & Noble did not provide reasonable notice of its Terms of Use, and that Nguyen therefore did not unambiguously manifest assent to the arbitration provision contained therein.").

The parties do not dispute that the appearance of a terms and services link on the Uber App registration screen provided sufficient notice of the arbitration agreement. Rather, Namisnak and Falls deny being bound by an arbitration agreement to which they did not assent, seeing as neither plaintiff ever downloaded the Uber App or had the opportunity to review its terms and conditions. Miraglia

contends that although he initially agreed to Uber's terms and conditions, the arbitration provision is unenforceable against him because he deleted the Uber App. In the alternative, he argues that he cannot be compelled to submit his claims to arbitration because the defendants named in this action were not parties to the terms and conditions contract.

### A.  Falls and Namisnak

Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms. *E.E.O.C. v. Waffle House*, 534 U.S. 279, 293 (2002); *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("the FAA does not require parties to arbitrate when they have not agreed to do so"). Having never downloaded the Uber App, Falls and Namisnak lacked notice of Uber's terms and conditions, including its embedded arbitration provision, and never manifested their intention to be bound.

Nevertheless, Uber argues that Falls and Namisnak are subject to the arbitration agreement as a matter of California substantive law. "[S]ubstantive federal law [governs] the enforceability of arbitration agreements" but does not "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009). According to Uber, plaintiffs are precluded from refusing to arbitrate by the doctrine of equitable estoppel, which permits enforcement of an arbitration agreement against a nonsignatory under certain circumstances. *Id*. at 631. In California, "[w]hen a plaintiff brings a claim which *relies on contract terms* against a defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 443 (Ct. App. 2011). "When that plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." *Id*. When determining whether equitable estoppel is appropriate, courts must look to the nature of the claims being asserted to determine whether they are "intimately founded in and intertwined with the underlying contract obligations." *Id.* at 442-43.

United States District Court
Northern District of California

1      As Uber views it, plaintiffs' standing to sue is based on allegations that they would have

2   used the Uber App but for Uber's discriminatory policies. Had Falls and Namisnak downloaded

3   and used the Uber App, they would have been required to agree to Uber's terms and conditions,

4   including the arbitration provision. Therefore, Uber reasons, plaintiffs necessarily rely on the

5   agreement in bringing this suit and should be equitably estopped from avoiding its obligations.

6   This argument is unpersuasive. The fact that Uber's terms and conditions are implicated in the

7   averments of the complaint does not by itself indicate that plaintiffs are claiming some privilege or

8   benefit derived from Uber's terms and conditions, or that they are seeking to use the terms and

9   conditions against Uber.

10      The purpose of equitable estoppel is to prevent parties from invoking the terms of a

11   contract as the basis for suit while avoiding a corresponding contractual obligation to arbitrate.

12   *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543-44 (Ct. App. 2009). "The linchpin for

13   equitable estoppel is equity—fairness," and "the application of the doctrine is fact-specific." *Id.* at

14   555 (internal quotations omitted) (quoting *Grigson v. Creative Artists, LLC*, 210 F.3d 524, 528

15   (5th Cir. 2000). Falls and Namisnak assert claims against Uber based on rights created by the

16   ADA, which are not dependent upon or bound up in the terms and obligations of Uber's service

17   agreement. It is Uber's alleged refusal to comply with the requirements of the ADA, not the

18   requirements of its consumer agreements, which form the basis of this lawsuit. *See Goldman* 92

19   Cal. Rptr. 3d at 543 (holding that plaintiff signatories were not equitably estopped from refusing to

20   arbitrate under the terms of an agreement because their "allegations depend solely on the actions

21   of [defendant nonsignatories], not on the terms of the operating agreements, for their success.").

22   Therefore, it does not offend the principles of equity and fairness to conclude that Uber's

23   arbitration agreement is not binding upon Falls and Namisnak.

24      Uber cannot use its consumer arbitration agreements so expansively as to block all

25   prospective ADA plaintiffs from seeking relief in federal court. Because Falls and Namisnak never

26   agreed to arbitrate claims against Uber and are not equitably estopped from refusing to do so,

27   Uber's motion to compel arbitration is denied as to their claims.

28

**B.  Miraglia**

Unlike Falls and Namisnak, Miraglia does not deny agreeing to Uber's terms and conditions when he created an Uber account. Instead, Miraglia contends that he rescinded the agreement by deleting the Uber App, rendering the agreement's arbitration clause unenforceable against him. In response, Uber argues that rescission is an issue of disputed fact that must itself be arbitrated, for "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). Because Miraglia asserts a challenge to the validity of his contract with Uber, not the validity of the specific arbitration provision contained therein, the question of rescission must go to arbitration.

Alternatively, Miraglia claims that Uber Technologies, Inc. and Raiser, LLC cannot enforce the arbitration provision against him because they are not parties to the terms and conditions agreement. The agreement purports to create a contract between the Uber App user and "Uber USA, LLC and its subsidiaries and affiliates (collectively 'Uber')." In California, "[a] corporation is an 'affiliate' of, or a corporation is 'affiliated' with, another specified corporation if it directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the other specified corporation." Cal. Corp. Code § 150.[1] Uber explains that Uber Technologies, Inc. is the parent company that controls Uber USA, LLC and Raiser, LLC. Thus, Uber Technologies, Inc. and Raiser, LLC are affiliates of Uber USA, LLC, and parties to the arbitration agreement embedded in Uber's terms and conditions.

Miraglia asserts that defendants in this matter are not affiliated with Uber USA, LLC, because that entity does not appear on Uber's certification of interested entities. *See* Dkt. No. 12. The Federal Rules, however, only require Uber to disclose a parent or controlling entity. *See* Fed. R. Civ. Proc. 7.1. Because Uber Technologies, Inc. is the parent company, it was not required to disclose Uber USA, LLC. The relevant local rules require disclosure of any entity which has "(i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding; or

---

[1] Uber's consumer contracts contain a choice of law provision selecting California law. Barajas Decl. Exh. 1 § 7.

United States District Court
Northern District of California

(ii) any other kind of interest that could be substantially affected by the outcome of the proceeding." Civ. Loc. R. 3-15. Uber denies that Uber USA, LLC has a financial interest or any other kind of interest that might be affected by the outcome of this litigation, and Miraglia has pointed to no evidence indicating otherwise. Therefore, the failure to list Uber USA, LLC on the certification disclosure does not demonstrate that Uber USA, LLC, Uber Technologies, Inc., and Raiser, LLC are not affiliates who are all parties to the arbitration agreement that binds Miraglia.

Not only is the arbitration agreement enforceable against Miraglia, his ADA dispute with Uber is within the scope of the agreement. The 2016 terms and services arbitration agreement, which was in effect when Miraglia created his Uber account, is drafted broadly to cover "any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or *the use of the Services*." Barajas Decl. Exh. 1 § 6 (emphasis added). Miraglia's ADA claim, which arises out of his inability to access and use Uber's transportation services, is within the scope of the agreement. Accordingly, Uber's motion to compel arbitration of Miraglia's claims is granted.

## V. CONCLUSION

For the aforementioned reasons, Uber's motion to compel arbitration is granted as to claims brought by Miraglia, and denied as to claims brought by Falls and Namisnak.


**IT IS SO ORDERED**.


Dated: April 13, 2018

_____
RICHARD SEEBORG
United States District Judge