MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez (*pro hac vice*)
200 Biscayne Boulevard, Suite 5300
Miami, FL 33131
T:  305.415.3000
F:  305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (*pro hac vice*)
Patrick Harvey (*pro hac vice*)
Clara Kollm (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T:  202.739.3000
F:  202.739.3001
stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com
clara.kollm@morganlewis.com

Kathy H. Gao (CA Bar No. 259019)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
T: 213.612.2500
F: 213.612.2501
kathy.gao@morganlewis.com

*Attorneys for Defendants*
*Uber Technologies, Inc. & Rasier, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHAN NAMISNAK and FRANCIS FALLS,<br><br>              Plaintiffs,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>              Defendants. | Case No. 3:17-cv-06124-RS<br><br>**DEFENDANTS' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   July 12, 2018, at 1:30 p.m.<br>Judge:  Hon. Richard Seeborg |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, in the courtroom of the Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, CA 94102, on July 12, 2018 at 1:30 p.m., or as soon thereafter as counsel may be heard, Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber") will move the Court to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

As explained in the accompanying Memorandum of Points and Authorities, Plaintiffs fail to state a claim under 42 U.S.C. § 12182 because they do not allege that Uber owned, leased, leased to, or operated any "place of public accommodation" within the meaning of the statute, and they do not challenge a service of any "place of public accommodation." Moreover, Plaintiffs lack standing to assert a claim based on their allegation that Uber once hosted a concert at a "place of public accommodation."

In addition, Plaintiffs fail to state a claim under 42 U.S.C. § 12184. Consistent with this Court's prior decisions in a related case, Plaintiffs' claim may proceed only on a theory that Uber failed to make reasonable modifications to specific policies. An essential element of such a claim is that the plaintiff, before commencing litigation, had requested the reasonable modification that the defendant is alleged to have failed to provide. Plaintiffs do not allege to have requested that Uber make any modification to any policies, so they cannot state a reasonable modification claim.

Respectfully submitted,

Dated:  May 22, 2018                         MORGAN, LEWIS & BOCKIUS LLP

By: s/ Anne Marie Estevez
  Anne Marie Estevez
  Stephanie Schuster
  Patrick Harvey
  Clara Kollm
  Kathy H. Gao

*Attorneys for Defendants*

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiffs Do Not Allege Discrimination In Any Service Of A "Place Of Public Accommodation" Operated By Uber ................................................................................ 2

        A.    The Uber App Is Not A "Place Of Public Accommodation" ..................................... 2

        B.    The Uber App Is Not A Service Of Any "Place Of Public Accommodation" ........... 4

        C.    Plaintiffs Do Not Plausibly Allege Uber Operated The Galantis Concert Venue ...... 6

        D.    Plaintiffs Lack Standing To Sue Over The Galantis Concert In Any Event ............. 7

    II.    Plaintiffs Fail To State Any Claim Based On An Alleged Failure To Make "Reasonable Modifications" To Policies ............................................................................ 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 2

*Bowers v. NCAA*,
   91 F. Supp. 2d 460 (D.N.J. 1998) ...................................................................................... 4

*Chapman v. Pier 1 Imports Inc.*,
   631 F.3d 939 (9th Cir. 2011) .............................................................................................. 7

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................................. 7

*Cullen v. Netflix, Inc.*,
   600 F. App'x 508 (9th Cir. 2015) ....................................................................................... 3

*Davidson v. Kimberly-Clark Corp.*,
   — F.3d —, 2018 WL 2169784 (9th Cir. May 9, 2018) ..................................................... 7

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) .............................................................................................. 6

*Dudley v. Hannaford Bros. Co.*,
   333 F.3d 299 (1st Cir. 2003) .............................................................................................. 8

*Earll v. eBay, Inc.*,
   599 F. App'x 695 (9th Cir. 2015) ....................................................................................... 3

*Frankeberger v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No. 09-1827, 2010 WL 2217871 (W.D. Wash. June 1, 2010) .......................................... 9

*Galvez v. Auto. Club*,
   No. 16-0887, 2017 WL 4586934 (C.D. Cal. May 5, 2017) ........................................... 8, 9

*Jancik v. Redbox Automated Retail, LLC*,
   No. 13-1387, 2014 WL 1920751 (C.D. Cal. May 14, 2014) ............................................. 3

*Karczewski v. DCH Mission Valley LLC*,
   862 F.3d 1006 (9th Cir. 2017) ............................................................................................ 8

*Montalvo v. Radcliffe*,
    167 F.3d 873 (4th Cir. 1999) ........................................................................................... 8

*Nat'l Fed'n of the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ............................................................................ 4

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ........................................................................................... 7

*Pickern v. Pier 1 Imports*,
    457 F.3d 963 (9th Cir. 2006) ........................................................................................... 6

*Reno v. ACLU*,
    521 U.S. 844 (1997) ......................................................................................................... 3

*Riley v. California*,
    134 S. Ct. 2473 (2014) .................................................................................................... 3

*Smith v. Pride Mobility Prod. Corp.*,
    No. 16-04411, 2016 WL 6393549 (N.D. Cal. Oct. 28, 2016) ....................................... 7

*Stern v. Sony Corp. of Am.*,
    459 F. App'x 609 (9th Cir. 2011) ............................................................................... 4, 5

*Stern v. Sony Corp.*,
    No. 09-7710, 2010 WL 8022226 (C.D. Cal. Feb. 8, 2010) ........................................... 5

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) ..................................................................................... 3, 4

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................... 3, 6

**STATUTES**

42 U.S.C. § 12112(b)(5)(A) ................................................................................................ 8

42 U.S.C. § 12182 ................................................................................................................ 2

42 U.S.C. § 12182(a) .................................................................................................... 2, 4, 6

42 U.S.C. § 12182(b)(2)(A)(ii) ........................................................................................... 8

42 U.S.C. § 12184 ................................................................................................................ 2

42 U.S.C. § 12184(b)(2)(A) ................................................................................................ 8

42 U.S.C. § 12188(a) ........................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Uber Technologies, Inc.'s cutting-edge smartphone application (the "Uber App") is a technological solution for the ridesharing market. The Uber App includes various request options that network independent riders and independent, third-party transportation providers ("Drivers"). In a handful of major cities, Uber has commenced experimental pilots involving an option called "uberWAV." That option enables riders who require specially-equipped, wheelchair accessible vehicles ("WAVs") to request rides from Drivers who have chosen both to invest in such vehicles and to seek and accept ride requests via the Uber App.

Plaintiffs have never used or even downloaded the Uber App. Nevertheless, in the First Amended Complaint, Plaintiffs claim Uber has violated two provisions of Title III of the Americans with Disabilities Act ("ADA")—Sections 12182 and 12184—solely because the Uber App in New Orleans does not yet include the uberWAV option. As summarized below, Plaintiffs' allegations fail to make out a plausible claim for relief under either ADA provision.

**Plaintiffs Fail to State a Claim Under Section 12182.** Section 12182 proscribes discrimination *by* an entity that operates a "place of public accommodation," in the services *of* that "place of public accommodation." In this circuit, it is well settled that only an actual, physical place may qualify as a "place of public accommodation." The Uber App is not an actual, physical place. It is software for smartphones.

Plaintiffs' allegation that Uber once hosted a free concert, to which Uber App users could enter to win passes and to have Uber pay the costs of their rides to the show, does not plausibly suggest that the Uber App is a service *of an actual, physical place* (the concert venue), either. To the contrary, that allegation shows the opposite—*i.e.*, that the free concert was a service *of the Uber App*. Indeed, the relief Plaintiffs seek concerns the services offered (and not offered) *via the Uber App* at any time, not the services offered via the Uber App on the single occasion Uber hosted a concert. Accordingly, Plaintiffs do not allege a sufficient nexus between the Uber App and any actual, physical place to support their claim under Section 12182.

**Plaintiffs Fail to State a Claim Under Section 12184.** In a related case, this Court

Case No. 3:17-cv-06124-RS     1     DEFENDANTS' MOTION TO DISMISS

1  concluded that while an entity subject to Section 12184 need not acquire WAVs to provide
2  transportation, such an entity may be obligated to provide WAV service as a reasonable
3  modification to the entity's policies.  An essential element of any reasonable modification claim
4  is that, before filing suit, the plaintiff had *actually requested a modification*.  Plaintiffs do not
5  allege to have done so here.  In fact, Plaintiffs allege they never downloaded the Uber App or
6  created Uber accounts, which would have enabled them to easily make such a request.
7  Accordingly, Plaintiffs fail to state a claim under Section 12184.

8  For these reasons, and others discussed below, Plaintiffs fail to state any plausible claim
9  for relief.  The First Amended Complaint should therefore be dismissed in its entirety.

## BACKGROUND

11  Plaintiffs live in New Orleans, do not drive, and rely on public transportation.  ECF
12  No. 54 ("FAC") ¶¶ 1–3.  Plaintiffs have not used Uber's technology, having never even
13  downloaded the Uber App.  *Id.* ¶ 102.  They allege this is due to their need for "heavy electric
14  wheelchair[s] that cannot be folded up and be place in a car's trunk."  *Id.* ¶ 7.  Because the Uber
15  App in New Orleans does not yet include an uberWAV option, *id.* ¶ 20, Plaintiffs allege they
16  cannot benefit from the Uber App, *id.* ¶¶ 7–8.  And, as a result, Plaintiffs claim Uber violated two
17  provisions of Title III of the ADA—42 U.S.C. §§ 12182 and 12184.  *Id.* ¶¶ 10–11.

## ARGUMENT

19  Rule 12(b)(6) tests the legal sufficiency of a plaintiff's allegations.  *Bell Atl. Corp. v.*
20  *Twombly*, 550 U.S. 544, 570 (2007).  Accepting all factual allegations as true and disregarding
21  any implausible, contradictory, or conclusory assertions, the complaint must "raise a right to
22  relief above the speculate level."  *Id.* at 555.  "[O]nly a complaint that states a plausible claim for
23  relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**I.   PLAINTIFFS DO NOT ALLEGE DISCRIMINATION IN ANY SERVICE OF A "PLACE OF PUBLIC ACCOMMODATION" OPERATED BY UBER.**

**A.   The Uber App Is Not A "Place Of Public Accommodation."**

Section 12182 imposes obligations only on private entities that own, lease, or operate a "place of public accommodation."  42 U.S.C. § 12182(a).  Settled Ninth Circuit precedent holds

2

Case No. 3:17-cv-06124-RS                                                  DEFENDANTS' MOTION TO DISMISS

1  that a "place of public accommodation" must be an "*actual, physical place[]* where goods or services are open to the public." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (emphasis added). Applying that logic, the Ninth Circuit has held that a website is not a "place of public accommodation" under Section 12182 because a website is not an actual, physical place. *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (eBay.com is not a "place of public accommodation"); *Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir. 2015) (same, netflix.com); *accord* (same, redboxinstant.com); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (same, facebook.com).

The same logic compels the conclusion that smartphone applications—like the Uber App—are not "places of public accommodation" under Section 12182. Like websites, smartphone applications are not actual, physical places. *See Jancik v. Redbox Automated Retail, LLC*, No. 13-1387, 2014 WL 1920751, at *9 (C.D. Cal. May 14, 2014) (a "smartphone application" is an "online service"). They are not "places" in any sense. They are software. *Riley v. California*, 134 S. Ct. 2473, 2490 (2014). And like the Internet, smartphone applications are "a unique medium … located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet" and a smartphone. *Reno v. ACLU*, 521 U.S. 844, 851 (1997). Indeed, with increasing frequency, "the data a user views on many modern cell phones may not in fact [even] be stored on the device itself." *Riley*, 134 S. Ct. at 2491.

Recognizing the limits of Section 12182's plain language, Plaintiffs attempt to tie the Uber App to an actual, physical place. Specifically, Plaintiffs allege that a few hours after they commenced this action, Uber "hosted" a free concert featuring the band Galantis. FAC ¶¶ 79–80; *see* ECF No. 1. They claim that Uber App users could enter for a chance to win passes to the free Galantis show by entering a promotional code within the Uber App and then, on the evening of the concert, selecting a temporary "Galantis" option within the Uber App; if a Driver accepted the Galantis ride request, Uber also would cover the price of the ride. FAC Ex. D (ECF No. 54-4); *see Galantis Teams Up With Uber To Launch Secret Show In New Orleans on Oct. 26th*, River Beats (Oct. 24, 2017), http://riverbeats.life/galantis-teams-uber-launch-secret-show-new-orleans/ ("According to a press release from the group [Galantis], fans can acquire passes using the Uber

3

Case No. 3:17-cv-06124-RS                                            DEFENDANTS' MOTION TO DISMISS

app …. The experience is free and Uber will cover the cost of fans' rides to the concert.") (cited in the amended complaint, FAC ¶ 78 n.18). Admission was "not guaranteed with a ride" requested via the Galantis option; admission was or was not "granted at the door pending venue capacity." FAC Ex. D. To the extent these allegations are an effort to invoke the so-called "nexus" theory of liability under Section 12182, they fail to state a claim, as explained below.

### B. The Uber App Is Not A Service Of Any "Place of Public Accommodation."

Like the Ninth Circuit's interpretation of the phrase "place of public accommodation," the nexus theory is grounded in Section 12182's plain language. For the statute proscribes discrimination both *within* a place of public accommodation and in the "enjoyment of the … services … *of* any place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). Faithful to this language, courts in this circuit permit ADA suits based on allegedly inaccessible websites only if the website is a service "*of* a place of public accommodation." *See, e.g.*, *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952–53 (N.D. Cal. 2006).

Not just any connection between the challenged service and an actual, physical place suffices. Consistent with the statute's plain language, the "nexus" theory only works when the allegedly discriminatory service is a service "*of* a place of public accommodation." *See Bowers v. NCAA*, 90 F. Supp. 2d 460, 488 (D.N.J. 1998) ("[W]hat is denied must be 'of' a physical place."). Target's website is a service *of* Target's stores because it is "heavily integrated" with Target's stores—customers can use it to "purchase many of the items available in Target stores, … refill a prescription or order photo prints for pick-up at a store, and print coupons to redeem at a store." *Target*, 452 F. Supp. 2d at 949, 954–55. But an employer-provided insurance policy is not a service *of* the insurance office from which the employer obtained the policy. *Weyer*, 198 F.3d at 1114–15 (citing *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998), and *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) (en banc)). And video games are not services *of* associated gaming conventions "hosted by" the games' manufacturer. *Stern v. Sony Corp. of Am.*, 459 F. App'x 609, 611 (9th Cir. 2011) (affirming dismissal for failure to state a claim).

To the extent Plaintiffs attempt to invoke the nexus theory, they fail to state a claim because they do not allege that the Uber App is a service of any "place of public

1   accommodation." Specifically, Plaintiffs do not allege that the Uber App is a service *of the venue*
2   where the Galantis concert was held. At best, Plaintiffs allege the opposite—*i.e.*, that the ability
3   to win admission to the free Galantis concert was a service *of the Uber App*. FAC Ex. D; *see*
4   FAC ¶ 81 ("[D]ue to the 'secret' nature of Uber's event featuring Galantis, Plaintiffs are unable to
5   otherwise attend or patronize the event."). Put another way, unlike the *Target* plaintiffs, Plaintiffs
6   here do not allege that any barrier within the Uber App precluded them from enjoying the benefits
7   *of the venue*. Rather, they claim that the lack of an uberWAV option within the Uber App in New
8   Orleans precludes them from enjoying the benefits *of the Uber App*.

9   And, critically, Plaintiffs do not allege that they attempted to gain admission to the free
10  concert but were denied. The *Stern* case is instructive. The plaintiff in that case claimed that
11  "visual processing problems" in Sony's video games prevented him from fully enjoying the
12  games and, thereby, prevented him from fully enjoying related gaming conventions Sony hosts.
13  *Stern v. Sony Corp.*, No. 09-7710, 2010 WL 8022226, at *3 (C.D. Cal. Feb. 8, 2010). The
14  plaintiff, however, never alleged he was "denied access to the[] conventions"; he alleged only that
15  he was "deterred from attending [them] because the primary privileges of the [conventions]
16  require familiarity with the" allegedly inaccessible video games. *Id.* The court rejected that
17  attempt manufacture "the required 'nexus' between Sony's products and an actual physical
18  place." *Id.*, *aff'd sub nom. Stern v. Sony Corp of Am.*, 459 F. App'x 609 (9th Cir. 2011)
19  (plaintiff's asserted nexus was "too tenuous to support a cause of action under the ADA").

20  Plaintiffs could have downloaded and registered to use the Uber App and then entered to
21  win free passes to the concert just like everyone else, but chose not to. (Had Plaintiffs done so,
22  they could have requested assistance from Uber through the "help" feature in the Uber App.)
23  They obviously knew about the "widely publicized" concert beforehand, FAC ¶ 78, because it
24  occurred *after* they filed their complaint. *See* ECF No. 1. Their only excuse for not even trying
25  to attend is that they were "deterred" from downloading the Uber App because of the lack of an
26  uberWAV option. FAC ¶ 82. Plaintiffs' alleged deterrence is insufficient to state a claim, just
27  like the *Stern* plaintiff's alleged deterrence. *See Stern*, 2010 WL 8022226, at *3. While
28  deterrence may be relevant to whether a plaintiff has sustained an "injury" sufficient for

5

Case No. 3:17-cv-06124-RS                                              DEFENDANTS' MOTION TO DISMISS

Article III standing (an inquiry that presupposes a cognizable claim), deterrence has nothing to do with whether the plaintiff states a plausible, cognizable claim in the first instance.

### C. Plaintiffs Do Not Plausibly Allege Uber Operated The Galantis Concert Venue.

To state a claim against Uber based on the concert, Plaintiffs also must plausibly allege that Uber "owns, leases (or leases to), or operates" the concert venue.  42 U.S.C. § 12182(a). Plaintiffs fail to do so here.  Rather, citing allegations that quote from the ADA, Plaintiffs allege, in conclusory fashion, that Uber "*operat[ed]* a place of public accommodation."  FAC ¶ 83 (emphasis added) (citing FAC ¶¶ 83–89).  Legal conclusions, however, are not facts, much less plausibly alleged facts.  Nor do Plaintiffs otherwise allege facts sufficient to make their legal conclusion plausible.  This pleading failure independently dooms Plaintiffs' Section 12182 claim. *See, e.g.*, *Young*, 790 F. Supp. 2d at 1116 (even where there is a nexus between the defendant's website and an actual, physical place open to the public, plaintiff fails to state a claim if that place is not owned, leased, or operated by the defendant).

In Section 12182, the verb "operate" means "to put or keep in operation, to control or direct the functioning of, … to conduct the affairs of," or to "manage."  *Pickern v. Pier 1 Imports*, 457 F.3d 963, 966–67 (9th Cir. 2006).  An entity can temporarily "operate" a facility, but only if it "exercise[s] sufficient control over the [facility], and in particular over the configuration of the facilit[y], … with regard to accessibility."  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 877–78 (9th Cir. 2004).

Plaintiffs do not allege Uber did any of that vis-à-vis the concert venue.  All they allege is that Uber "hosted" the one-time Galantis concert and enabled the chance to enter to win passes to the free show and to have Uber cover the costs of the users' rides to the show.  FAC ¶¶ 76–79. Those facts do not plausibly suggest that Uber directed the functioning of, conducted the affairs of, or managed the venue.  Nor do those facts suggest that Uber had any control over the venue's configuration with regard to accessibility (or otherwise for that matter).  Indeed, any suggestion to the contrary is belied by Uber's blog post about the concert, attached to the complaint, which made clear that Uber could "not guarantee[]" riders' admission to the show even if a Driver

accepted the Galantis request, since admission would be limited based on "*venue* capacity." FAC Ex. D (emphasis added). For this reason, too, Plaintiffs fail to state a claim. *See, e.g.*, *Smith v. Pride Mobility Prod. Corp.*, No. 16-04411, 2016 WL 6393549, at *5 (N.D. Cal. Oct. 28, 2016) ("complaint contain[ing] no facts to suggest that Defendant owns, leases or operates an actual physical location at all" fails to state a claim).

### D. Plaintiffs Lack Standing To Sue Over The Galantis Concert In Any Event.

The ADA affords private litigants a right to sue only for prospective, injunctive relief. 42 U.S.C. § 12188(a). To have standing to seek such relief, an ADA plaintiff must not only have sustained an actual injury; the plaintiff also must show "a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). At the pleading stage, a complaint must be dismissed for lack of standing unless a real and immediate threat future harm is "*plausibly*" alleged. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (emphasis added) (citing *Twombly*, 550 U.S. at 556; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *accord Davidson v. Kimberly-Clark Corp.*, — F.3d — , 2018 WL 2169784, at *9 (9th Cir. May 9, 2018).

Plaintiffs do not allege any "real and immediate threat of repeated injury" associated with any actual, physical place. They allege that Uber "hosted" a concert exactly once: on October 26, 2017. FAC ¶ 79. That concert was over and done with before the summonses even issued in this case. *See* ECF Nos. 4–5. It was a one-time show. The complaint is devoid of any allegation that Uber has "hosted" similar events in the past or that Uber will "host" similar events in the future. Nor do Plaintiffs allege that if Uber were to "host" another concert, they would download the Uber App and attempt to win passes to that hypothetical show. They chose not to do even that, despite knowing about the "widely publicized" Galantis concert. FAC ¶ 78; *see id.* ¶ 82.

One instance of alleged discrimination "does nothing to establish a real and immediate threat" that the plaintiff will again experience the same discrimination. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). Plaintiffs allege, at most, one instance here. Thus, even if the Uber App were a service of a place of public accommodation, and even if Uber operated any such place of public accommodation, Plaintiffs' Section 12182 claim fails for lack of standing.

## II. PLAINTIFFS FAIL TO STATE ANY CLAIM BASED ON AN ALLEGED FAILURE TO MAKE "REASONABLE MODIFICATIONS" TO POLICIES.

In the related case styled *Crawford v. Uber Technologies, Inc.*, No. 3:17-cv-06124-RS (N.D. Cal.), this Court recognized that Section 12184 does not require covered entities (*i.e.*, those "primarily engaged in the business of transporting people") to purchase or lease WAVs for use in their transportation systems. *Crawford*, ECF Nos. 80, 99. Still, the Court determined that a covered entity may be obligated to provide WAV service as a "reasonable accommodation" to an individual with a disability. *Crawford*, ECF No. 80 at 8 (citing 42 U.S.C. § 12184(b)); *accord Crawford*, ECF No. 99 at 4. Consistent with this Court's decision in *Crawford*, to state a claim under Section 12184 Plaintiffs must plausibly allege that Uber failed to make "reasonable modifications" to its policies.[1]

On this score, Plaintiffs recite the statutory language, alleging Uber has violated Section 12182 and Section 12184 "by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford accessible transportation services to individuals with disabilities." FAC ¶ 94; *accord* 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A). However, an essential element of that type of claim is that the plaintiff actually "requested [a] reasonable modification" to a specific policy from the defendant. *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017); *accord Galvez v. Auto. Club*, No. 16-0887, 2017 WL 4586934, at *4 (C.D. Cal. May 5, 2017) ("Plaintiff ... is required to request, before filing suit, that Defendants change their policy in a way that is both reasonable and necessary."); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003). Plaintiffs here never made such a request.

---

[1] Title I of the ADA speaks to "reasonable *accommodations* to the known *physical or mental limitations of an otherwise qualified individual with a disability* who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Title III of the ADA, however, is more limited; it speaks to "reasonable *modifications* in *policies, practices, or procedures*, when such modifications are necessary to afford" services "to individuals with disabilities," 42 U.S.C. § 12182(b)(2)(A)(ii) (emphases added). *See Montalvo v. Radcliffe*, 167 F.3d 873, 876 n.2 (4th Cir. 1999) ("Title III of the Americans with Disabilities Act does not impose a requirement that a place of public accommodation provide a "reasonable accommodation" for a disability, but rather that, in limited circumstances, it make reasonable modifications.").

1  Plaintiffs do not allege to have ever requested that Uber make any modification to any policy. That makes sense, since neither Plaintiff bothered to download the Uber App to attempt to request a ride, win free passes to the Galantis concert, or inquire about wheelchair-accessible rides to the concert. Plaintiffs cannot maintain a claim for failure to make modifications they never requested. *See, e.g.*, *Frankeberger v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 09-1827, 2010 WL 2217871, at *4 (W.D. Wash. June 1, 2010) (finding claim "untenable" where "plaintiffs have never requested a modification"); *Galvez*, 2017 WL 4586934, at *4. Accordingly, Plaintiffs cannot state a claim under Section 12184. Moreover, in addition to all the defects discussed above, Plaintiffs' Section 12182 claim fails for this reason as well.

## CONCLUSION

The First Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

Dated:   May 22, 2018

MORGAN, LEWIS & BOCKIUS LLP

By: s/ Anne Marie Estevez
    Anne Marie Estevez
    Stephanie Schuster
    Patrick Harvey
    Clara Kollm
    Kathy H. Gao

*Attorneys for Defendants*