UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN NAMISNAK, et al., <br> Plaintiffs, <br> v. <br> UBER TECHNOLOGIES, INC., et al., <br> Defendants. | Case No. 17-cv-06124-RS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART UBER'S MOTION TO DISMISS** |

## I. INTRODUCTION

This case involves a dispute over the application of the Americans with Disabilities Act ("ADA") to the Uber rideshare service. Invoking federal question jurisdiction, plaintiffs Stephan Namisnak and Francis Falls (collectively, "Plaintiffs") filed this action against defendants Uber Technologies, Inc. and Raiser, LLC (collectively, "Uber"). 28 U.S.C. § 1331. Uber moves to dismiss Plaintiffs' First Amended Complaint ("FAC") in its entirety for failure to state a claim under section 12184 or section 12182. 42 U.S.C. §§ 12182, 12184. Uber argues Plaintiffs fail to state a claim under section 12184 because they have not requested an accommodation, as required under section 12182(b)(2)(A)(ii) (referenced by way of section 12184(b)(2)(A)). Uber further argues Plaintiffs fail to state a claim under section 12182 because Uber does not qualify as a place of public accommodation. For the reasons set forth below, the motion to dismiss is denied in part and granted in part, with leave to amend.

## II. BACKGROUND[1]

Uber operates a vehicle-for-hire service that uses a mobile phone application (the "Uber App"). The Uber App allows users to request and pay for rides or other services through their credit card linked Uber account. Through this application, Uber offers various rideshare request options and has occasionally offered promotional services allowing users to order a free delivery of cake, doughnuts, or even puppies to their location. In certain major cities, Uber offers an option called "uberWAV" which enables riders to request a wheelchair accessible vehicle through the Uber App. Uber does not currently offer uberWAV in New Orleans, Louisiana.

Plaintiffs are persons with disabilities who reside in New Orleans. Both plaintiffs use electric wheelchairs and rely on public transportation services to get around. While Plaintiffs would like to use Uber's transportation service, they cannot because the Uber App does not offer uberWAV in New Orleans. On October 24, 2017, Uber emailed customers in the New Orleans area about an exclusive show featuring the band Galantis. As explained in Uber's promotional materials, on the day of the show, the Uber App would display an option called "Galantis" which would summon a car to take the user to the "secret" location of the concert. Because the Uber App did not allow users to request a wheelchair accessible vehicle, Plaintiffs insist they had no way to get to the concert.

Plaintiffs have not downloaded the Uber App because they know it would not allow them to request a vehicle that could accommodate their electric wheelchairs. If Uber were to offer a ride service that could accommodate electric wheelchairs, Plaintiffs would attempt to use the service and participate in Uber's promotional events. By failing to provide a mechanism to serve individuals who use electric or otherwise non-foldable wheelchairs, Plaintiffs assert, Uber has violated its obligations under Title III of the ADA. *See* 42 U.S.C. §§ 12182, 12184. Plaintiffs seek declaratory and injunctive relief. 42 U.S.C. § 12188.

---

[1] Except where noted, the facts in this section are drawn from Plaintiffs' FAC and are taken as true for the purpose of deciding the motion to dismiss.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 "does not require detailed factual allegations," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy. Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555.

### IV. DISCUSSION

In a single claim for relief, Plaintiffs allege Uber violated Title III of the ADA under two independent theories. First, Plaintiffs argue Uber is a specified public transportation service that discriminates against persons with disabilities by failing to provide wheelchair accessible service, in violation of section 12184. Second, Plaintiffs contend Uber is operating a place of public accommodation that similarly discriminates against persons with disabilities, in violation of section 12182.

### A. Plaintiffs' Theories for Relief under 42 U.S.C. § 12184

Section 12184 prohibits discrimination "on the basis of disability in the full and equal enjoyment of specified public transportation services." 42 U.S.C. § 12184(a). Under this section, discrimination includes failure to: (A) make reasonable modifications consistent with section 12182(b)(2)(A)(ii); (B) provide auxiliary aids and services consistent with section 12182(b)(2)(A)(iii); and (C) remove barriers consistent with sections 12182(b)(2)(A) and 12183(a)(2). 42 U.S.C. § 12184(b)(2).

#### 1. <u>Reasonable Modification under Section 12184(b)(2)(A)</u>

According to Uber, Plaintiffs fail to state a claim under section 12184 because neither of them requested a modification of Uber's polices, practices, or procedures prior to filing suit. Under section 12184(b)(2)(A), discrimination is defined as failure to make "reasonable modifications" consistent with the requirements of section 12182(b)(2)(A)(ii). Furthermore, to prevail under section 12182(b)(2)(A)(ii), a plaintiff must show, *inter alia*, the defendant failed to make a "requested reasonable modification." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). As the Central District of California has noted, the precise meaning of "requested" is not entirely clear. *See Galvez v. Auto. Club of S. Cali.*, No. SA CV 16-0887-DOC, 2017 WL 4586934, at *4 (C.D. Cal. 2017).

In *Fortyune*, a wheelchair-using plaintiff asked the defendant movie theater to remove a patron from a designated companion seat so his wife could sit next to him. 364 F.3d at 1078-79. The movie theater refused. *Id.* at 1079. The Ninth Circuit noted that "Fortyune asked both [the defendant] and the district court to ensure that he could be seated next to his wife or another companion," *Id.* at. 1083, creating ambiguity as to whether the term "requested reasonable modification" required a pre-suit request or simply referred to the relief sought in the suit itself. *See Galvez*, 2017 WL 4586934, at *4. In *Karczewski*, a paraplegic plaintiff asked the defendant car dealership temporarily to install vehicle hand controls to enable him to test drive a car. *Karczewski*, 862 F.3d at 1007. The dealership refused. *Id.* There, the court proceeded to discuss

the reasonableness of the plaintiff's "requested modification" but did not specifically analyze the request requirement.

Despite this ambiguity, district courts in the Ninth Circuit have interpreted *Karczewski* and *Fortyune* to require a plaintiff to ask a defendant to change its policy before filing suit. *See Razavi v. Coti*, No. 17-cv-04341-BLF, 2018 WL 2867575, at *3 (N.D. Cal. 2018); *Galvez*, 2017 WL 4586934, at *4; *Mannick v. Kaiser Foundation Health Plan, Inc.*, No. 03-5905-PJH, 2006 WL 2168877, at * 4 (N.D. Cal. 2006). While Plaintiffs need not "say the magic words," they must request an accommodation before they claim a defendant has refused to modify its policy, practices or procedures in violation of 12182(b)(2)(A)(ii). *Galvez*, 2017 WL 4586934, *4.

The FAC does not allege Plaintiffs requested an accommodation from Uber. Plaintiffs argue the court can infer the request requirement was satisfied during the mandatory General Order No. 56 settlement conference between Plaintiffs and Uber. The court, however, is not free to speculate as to a fact not pleaded in the complaint. Rather, the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face*." Iqbal*, 556 U.S. at 678. Accordingly, Plaintiffs have not pleaded sufficient facts to support their reasonable modification theory under section 12182(b)(2)(A)(ii) via section 12184(b)(2)(A).

### 2. All Other Theories for Relief under 42 U.S.C. § 12184

While Uber argues Plaintiffs have failed to state a claim under section 12184, it points to no authority requiring Plaintiffs to make a request for modification prior to suing under the auxiliary aid provision of section 12184(b)(2)(B), or the removal of barriers provision of section 12184(b)(2)(C). Accordingly, Uber's motion to dismiss the FAC in its entirety cannot succeed.

### B. Plaintiffs' Theories for Relief under 42 U.S.C. § 12182

Section 12182 prohibits discrimination on the basis of disability in the equal enjoyment of the goods and services of a place of public accommodation. 42 U.S.C. § 12182(a). Plaintiffs advance two arguments under section 12182 in support of their claim. First, Plaintiffs argue Uber's rideshare service qualifies as a place of public accommodation and is therefore subject to section 12182. Alternatively, Plaintiffs contend Uber's free rideshare service to the Galantis

concert bears a close "nexus" to the Galantis concert venue and therefore falls under section 12182.

### 1. Uber's Rideshare Service as a Place of Public Accommodation

Section 12181 provides a list of places of public accommodation. 42 U.S.C. § 12181. Based on these enumerated locales and the principle of *noscitur a sociis*, the Ninth Circuit has held that a place of public accommodation must be an "actual, physical place[] where goods or services are open to the public." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). Accordingly, websites are not generally considered places of public accommodation. *See Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (unpublished); *Cullen v. Netflix*, 600 Fed. App'x 508, 509 (9th Cir. 2015) (unpublished); *see also Young v. Facebook*, 790 F. Supp. 2d 1110, 1115-16 (N.D. Cal. 2011).

Uber argues the Uber App, like a website, is not a physical place and therefore does not qualify as a place of public accommodation. Plaintiffs argue Uber's business does qualify, namely as a "travel service." 42 U.S.C. § 12181(7)(F). Furthermore, Plaintiffs argue the physical place requirement runs contrary to congressional intent that the ADA be broadly construed, *Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013), and point to First Circuit precedent holding that a "travel service" can qualify as a place of public accommodation even if it lacks a physical office space, *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England*, 37 F.3d 12, 19 (1st Cir. 1994). Finally, Plaintiffs contend, Uber's rideshare service satisfies the physical place requirement in any event because the service sends physical vehicles to fetch customers and transport them to their desired location in the material world.

While "travel service" is listed as a place of public accommodation under section 12181(7)(F), the Ninth Circuit's binding precedent limits the term "places of public accommodation" to "actual, physical places." *Weyer*, 198 F.3d at 1114. Neither appeals to congressional intent nor out-of-circuit caselaw can justify a departure from binding precedent. Therefore, the question remains whether Uber's transportation services involve an "actual, physical place[] where goods or services are open to the public." *See Weyer*, 198 F.3d at 1114.

The fact that Uber sends cars to pick up customers at their desired location and drop them off at different locations is insufficient to qualify Uber's rideshare service as a place of public accommodation. In *Weyer*, the Ninth Circuit referred to insurance offices and book stores as the types of places where goods or services were open to the public. *See Weyer*, 198 F.3d at 1113-14. Neither the street corner where a customer hails a car-for-hire nor the cars themselves fit in the same category as the locations contemplated by *Weyer*. Other district court have similarly held cars, vans, or other types of vehicles do not qualify as places of public accommodation. *See, e.g.*, *Cottrell v. United Parcel Service*, No. 16–1689, 2017 WL 1363307, at * 2 (D.N.J 2017); *J.H. by and through Holman v. Just for Kids, Inc.*, 248 F. Supp. 3d 1210, 1222 (D. Utah 2017). Accordingly, Plaintiffs cannot show Uber's transportation service is a place of public accommodation.

### 2. Discrimination in Uber's Service of the Galantis Concert

According to Plaintiffs, even if Uber's rideshare service does not qualify as a place of public accommodation, it is subject to section 12182 because the lack of wheelchair accessible rideshare options prevented Plaintiffs from enjoying the services of a place of public accommodation, i.e. the Galantis concert. Uber advances three counterarguments. First, Uber contends the Uber App does not bear a close enough nexus to the Galantis concert to give rise to liability. Second, Uber argues Plaintiffs lack standing to claim discrimination with respect to the Galantis concert venue. Third, Uber argues the FAC lacks sufficient facts showing Uber operated the Galantis concert venue.

*a. The Nexus Between Uber's Rideshare Service and the Galantis Concert*

The protections of section 12182 are not limited to the four walls of a place of accommodation. Rather, section 12182 forbids discrimination in the services *of* a place of public accommodation, not just the services offered *in* the place of public accommodation. 42 U.S.C. § 12182(a). Thus, the protections of section 12182 may apply where there is nexus between the service at issue and the physical place of public accommodation. *Weyer*, 198 F.3d at 1114. In *Weyer*, the insurance policy purchased by the plaintiff through his employer did not bear a

sufficiently close nexus to the physical insurance office to give rise to a claim under section 12182. *Id.* at 114-15. By contrast, the decision whether to install ramps or elevators to enable disabled persons to get into an insurance office is closely related to the physical place of public accommodation. *See id.*

Applying this rule, the district court in *National Fed.'n of the Blind v. Target Corp.* held there was a sufficient nexus between Target.com and the physical Target stores because the website was "heavily integrated" with, and served as a gateway to, the stores. 452 F. Supp. 2d 946, 955 (N.D. Cal. 2006). In particular, the Target website allowed customers to refill prescriptions, order photo prints to pick up at the store, print coupons to redeem at the store, purchase many of the items offered in the store, and find information about store hours and locations. *Id.* at 949. By contrast, in *Stern v. Sony Corp. of Am.*, the Ninth Circuit held the plaintiff's inability to enjoy a video game due to his disability did not have a sufficient nexus with a marketing event associated with the game. 459 Fed. App'x 609, 611 (9th Cir. 2011) (unpublished).

Plaintiffs argue Uber's rideshare service bears a close nexus to the Galantis concert venue because it was the only way to get to the secret concert location. According to Plaintiffs, this presents an even more compelling case than does *Target* because Uber was "quite literally the physical gatekeeper of the concert." Opp. Mot. Dismiss 15. Uber argues *Stern* is more instructive, where the nexus between the purportedly inaccessible video game and a promotional event for the video game was too tenuous. Uber further contends the Galantis concert is better characterized as a benefit of using Uber, rather than Uber's rideshare being considered a service of the Galantis concert.

Practices that prevent disabled persons from physically accessing places of public accommodation are precisely the sort of activities *Weyer* described as closely related to a physical place of public accommodation. *Weyer*, 198 F.3d at 1114. Furthermore, like in *Target*, the Uber App and rideshare service are functioning as a gateway to the Galantis concert venue. Without access to Uber's rideshare services, it would be difficult, if not impossible, for Plaintiffs to enjoy the goods and services offered at the physical Galantis concert venue. Uber's comparison to *Stern*

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 17-cv-06124-RS
8

is inapposite. In *Stern*, the plaintiff alleged he was unable to enjoy fully the marketing event because the video game itself was inaccessible, yet, he never claimed he was prevented from gaining entry to the marketing event due to his disability. According to the FAC and attached exhibits, Uber's rideshare service was the only means of gaining access to the Galantis concert. Therefore Plaintiffs have plausibly alleged Uber's rideshare service to the Galantis concert bears a sufficiently close nexus to the physical location to fall within the ambit of section 12182.

### b. *Plaintiffs' Standing with Respect to the Galantis Promotional Concert*

Plaintiffs seek injunctive relief under § 12188. To have standing to seek such relief, Plaintiffs must plausibly allege a "real and immediate threat of repeated injury" in the future. *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Plaintiffs' FAC alleges only one concert hosted by Uber which they were unable to attend due to lack of wheelchair accessible options—the Galantis concert. In their opposition to the motion to dismiss, Plaintiffs mention two other parties hosted by Uber in the New Orleans area. Plaintiffs assert that they would participate in Uber's promotional events and use Uber's other services if these events and services were made accessible.

A single promotional event does not show a real and immediate prospect that Uber will host more "secret" events which Plaintiffs will be unable to attend. The two other promotional parties mentioned in Plaintiffs' opposition to the motion to dismiss were not discussed in the FAC and therefore cannot be considered. Furthermore, Plaintiffs cannot plausible claim they want to attend Uber's future promotional events without at least establishing the nature or subject of these activities. Accordingly, the FAC does not allege sufficient facts to show Plaintiffs plausibly have standing to seek injunctive relief with respect to Uber's rideshare service to the Galantis concert.

### c. *Whether Uber Operated the Galantis Concert Venue*

Even if Plaintiffs had standing with respect to Uber's rideshare service to the Galantis concert, the FAC does not plausibly allege Uber operated the Galantis concert venue. The anti-discrimination provisions of section 12182 only apply to an entity that "owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In this context, the term

"operate" means to keep in operation, control or direct the functioning of, conduct the affairs of, or to manage. *Pickern v. Pier 1 Imports*, 457 F.3d 963, 966 (9th Cir. 2006). A person may temporarily operate a place of public accommodation if the party exercises sufficient control over the venue and the configuration of facilities with regard to accessibility. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004).

Plaintiffs' FAC alleges Uber "hosted" a secret concert featuring the band Galantis and therefore operated a place of public accommodation. FAC ¶ 77-80. Plaintiffs, however, provide no facts indicating Uber controlled the concert venue or facilities, as required under the definition of the term "to operate." The allegation Uber "hosted" a concert, without more, is insufficient to support a reasonable inference that Uber operated the Galantis concert.

### C. Leave to Amend

If a court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider such factors as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

The FAC and the briefing related to this motion to dismiss do not indicate bad faith on the part of Plaintiffs. Furthermore, this is the first motion to dismiss entertained in this suit. While it is not apparent Plaintiff will be able to plead adequately all the theories advanced in the FAC, leave to amend is granted.

### V. CONCLUSION

For the foregoing reasons, Uber's motion to dismiss is granted in part and denied in part. In particular, Plaintiffs' claim survives under the auxiliary aid provision of section 12184(b)(2)(B) and the removal of barriers provision of section 12184(b)(2)(C). All other theories are dismissed with leave to amend. If Plaintiffs elect to file an amended complaint consistent with this order,

they must do so no later than October 25, 2018.

**IT IS SO ORDERED**.

Dated: 10/03/2018

_____
RICHARD SEEBORG
United States District Judge