1   MORGAN, LEWIS & BOCKIUS LLP
    Anne Marie Estevez (*pro hac vice*)
2   200 Biscayne Boulevard, Suite 5300
    Miami, FL 33131
3   T: 305.415.3000
    F: 305.415.3001
4   annemarie.estevez@morganlewis.com

5   Stephanie Schuster (*pro hac vice*)
    Patrick Harvey (*pro hac vice*)
6   Clara Kollm (*pro hac vice*)
    1111 Pennsylvania Avenue, NW
7   Washington, DC  20004
    T: 202.739.3000
8   F: 202.739.3001
    stephanie.schuster@morganlewis.com
9   patrick.harvey@morganlewis.com
    clara.kollm@morganlewis.com
10
    Kathy H. Gao (CA Bar No. 259019)
11  300 South Grand Avenue, 22nd Floor
    Los Angeles, CA 90071
12  T: 213.612.2500
    F: 213.612.2501
13  kathy.gao@morganlewis.com

14  *Attorneys for Defendants*

15
                IN THE UNITED STATES DISTRICT COURT
16          FOR THE NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
17

18  STEPHAN NAMISNAK and FRANCIS          Case No. 3:17-cv-06124-RS
    FALLS,
19                                        **DEFENDANTS' NOTICE OF MOTION**
              Plaintiffs,                 **TO DISMISS PLAINTIFFS' SECOND**
20                                        **AMENDED COMPLAINT AND**
          v.                              **MEMORANDUM OF POINTS AND**
21                                        **AUTHORITIES IN SUPPORT**
    UBER TECHNOLOGIES, INC. and
    RASIER, LLC,                          Hearing Date: April 2, 2019, 1:30 p.m.
22                                        Judge: Hon. Richard Seeborg
              Defendants.
23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
 WASHINGTON, D.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, in the courtroom of the Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, CA 94102, on April 2, 2020, at 1:30 p.m., or as soon thereafter as counsel may be heard, Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber") will move the Court to dismiss the Second Amended Complaint (ECF Nos. 86, 92) pursuant to Federal Rule of Civil Procedure 12(b)(6).

As explained in the accompanying Memorandum of Points and Authorities, Plaintiffs' remaining claim, for alleged violation of Title III of the Americans with Disabilities Act, should be dismissed for failure to state a claim because Plaintiffs, who do not allege that they presently are being subjected to discrimination, lack a private right of action to sue for alleged violations of 42 U.S.C. § 12184.  Even if they had a right of action, Plaintiffs fail to state a claim because the modifications they demand from Uber are patently unreasonable, and because Plaintiffs do not allege any facts suggest that they were denied necessary auxiliary aids or services or that their claims implicate any failure to removal barriers.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: December 17, 2019

By: s/ Anne Marie Estevez

Anne Marie Estevez
Stephanie Schuster
Patrick Harvey
Clara Kollm
Kathy H. Gao

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS.......................................................... 2

ARGUMENT ................................................................................................................. 3

    I.       PLAINTIFFS LACK A PRIVATE RIGHT OF ACTION. ................................... 4

    II.      PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT THEY HAVE BEEN DENIED ANY REASONABLE MODIFICATIONS................................ 7

          A.     Plaintiffs' Demand For "Equivalent Service" Is Unreasonable As A Matter Of Law.............................................................................. 8

          B.     Plaintiffs' Demand For 30–60 WAVs In A Week Is Patently Unreasonable................................................................................ 11

    III.     PLAINTIFFS' UNDEVELOPED, THROWAWAY ASSERTIONS OF OTHER ADA VIOLATIONS FAIL TO STATE A CLAIM. ............................. 13

          A.     Plaintiffs' Claim Does Not Involve a Failure to Provide Auxiliary Aids. ............................................................................................ 13

          B.     Plaintiffs Do Not Allege Any Failure to Communicate With Individuals With Disabilities Under 49 C.F.R. § 37.167(f). ..................... 14

          C.     Plaintiffs Have Not Stated A Cause of Action Based on a Failure to Remove Barriers............................................................................ 14

CONCLUSION ........................................................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alexander v. Sandoval,*
5     532 U.S. 275 (2001)................................................................................................4, 7

6

*Ashcroft v. Iqbal,*
7     556 U.S. 662 (2009)......................................................................................................4

8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................................3, 4

9

*California v. Azar,*
10     911 F.3d 558 (9th Cir. 2018).....................................................................................11

11

*Chapman v. Pier 1 Imports,*
    631 F.3d 939 (9th Cir. 2011) (en banc).....................................................................6

12

13

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)......................................................................................................4

14

*Dep't of Commerce v. New York,*
15     139 S. Ct. 2551 (2019)...............................................................................................12

16

*Gottschalk v. City & Cty. of San Francisco,*
    964 F. Supp. 2d 1147 (N.D. Cal. 2013) ...................................................................13

17

*Greater Hous. Transp. v. Uber Techs., Inc.,*
18     155 F. Supp. 3d 670, 677 (S.D. Tex. 2015) .........................................................3, 11

19

*Lee v. City of Los Angeles,*
20     250 F.3d 668 (9th Cir. 2001).......................................................................................7

21

*Lewis v. Casey,*
    518 U.S. 343 (1996)....................................................................................................11

22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
23     572 U.S. 118 (2014)...................................................................................................4, 7

24

*Montalvo v. Radcliffe,*
25     167 F.3d 873 (4th Cir. 1999).......................................................................................7

26

*Moreno v. G & M Oil Co.,*
    88 F. Supp. 2d 1116 (C.D. Cal. 2000)........................................................................6

27

*Namisnak v. Uber Techs., Inc.,*
28     No. 17-CV-06124-RS, 2018 WL 7200717 (N.D. Cal. Oct. 3, 2018) .......................15

ii

*Noel v. New York City Taxi & Limousine Comm'n*,
    687 F.3d 63 (2d Cir. 2012)..................................................................................8, 11, 12

*Rodriguez v. Investco, LLC*,
    305 F. Supp. 2d 1278 (M.D. Fla. 2004) ...........................................................5, 6

*Toomer v. City Cab*,
    443 F.3d 1191 (10th Cir. 2006)..................................................................8, 10, 12

**Statutes**

42 U.S.C. § 12103 ............................................................................................................13

42 U.S.C. § 12112 ..............................................................................................................7

42 U.S.C. § 12182 ......................................................................................................*passim*

42 U.S.C. § 12183 ....................................................................................................1, 4, 6

42 U.S.C. § 12184 ......................................................................................................*passim*

42 U.S.C. § 12188 ....................................................................................................4, 5, 6

**Other Authorities**

28 C.F.R. § 36.302 ............................................................................................................8

28 C.F.R. § 36.303 ..........................................................................................................13

49 C.F.R., Pt. 37, App'x D ..............................................................................................9

49 C.F.R. § 36.167(f) ......................................................................................................13

49 C.F.R. § 37.29 ........................................................................................................9, 12

49 C.F.R. § 37.103 ......................................................................................................9, 10

49 C.F.R. § 37.105 ....................................................................................................*passim*

49 C.F.R. § 37.167 ............................................................................................................4

49 C.F.R. § 37.167 ..........................................................................................................14

49 C.F.R. § 38.171 ..........................................................................................................15

136 Cong. Rec. H2599-01 (daily ed. May 22, 1990) (Statement of Rep. Fish), 136
    Cong. Rec. H2599-01..................................................................................................5

136 Cong. Rec. H2599-01 (daily ed. May 22, 1990) (Statement of Rep. Gingrich),
    136 Cong. Rec. H2599-01............................................................................................5

H.R. REP. 101-485, *reprinted in* 1990 U.S.C.C.A.N. 267 ................................................9

H.R. Rep. No. 101-485, *reprinted in* 1990 U.S.C.C.A.N. 303 .......................................5

*Nondiscrimination on the Basis of Disability by Public Accommodations & in Commercial Facilities*, 56 Fed. Reg. 35544-01, 35589 (July 26, 1991)....................................6

WEBSTER'S THIRD NEW INT'L DICTIONARY 778 (1986) ................................................15

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      This Court previously dismissed the bulk of Stephen Namisnak and Francis Falls's claims

3 with leave to amend.  Specifically, on October 3, 2018, this Court held Plaintiffs failed to state a

4 claim (i) under 42 U.S.C. § 12182 because the Uber Rider App is not a "place of public

5 accommodation" or service of such a place; and (ii) for failure to provide a "reasonable

6 modification" under 42 U.S.C. § 12184 because Plaintiffs did not request any modification from

7 Uber.  ECF No. 84.  By letter dated September 22, 2018, anticipating dismissal of their "reasonable

8 modification" claim, Plaintiffs demanded that Uber—within seven days of that letter—ensure that

9 a fleet of 30–60 WAVs is available to seek and accept ride requests via the Uber Rider App in New

10 Orleans and guarantee that riders who request WAV rides via the Uber Rider App receive

11 "equivalent service" consistent with the standard set forth in 49 C.F.R. § 37.105.  Then, Plaintiffs

12 filed their Second Amended Complaint.  For several reasons, Plaintiffs' latest pleading fails to state

13 any claim, and their complaint should be dismissed with prejudice.

14      *First*, Plaintiffs lack a private right of action.  Under Title III of the ADA, individuals who

15 have not been and are not being subjected to discrimination, but who claim they are "about to be"

16 subjected to discrimination have a right to sue only for alleged violations of 42 U.S.C. § 12183,

17 which concerns the design, construction, and alteration of commercial facilities.  Plaintiffs' theory

18 of the case is that *if* they were to download the Uber Rider App, and *if* they were to create an

19 account, and *if* they were to request a ride via the Uber Rider App, *then* they would be subjected to

20 discrimination under Section 12184, not under section 12183.  In other words, Plaintiffs claim, at

21 most, that they are "about to be" subjected to discrimination under Section 12184.  Congress did

22 not authorize private litigants to sue to assert such claims.

23      *Second*, even if they had a right of action, Plaintiffs fail to state a claim under Section 12184

24 based on a denial of "reasonable" modifications.  Plaintiffs demanded that Uber guarantee

25 equivalent WAV service in New Orleans, via a fleet of 30–60 WAVs, in just seven days.   That is

26 not reasonable as a matter of law.  Entities subject to Section 12184 never are obligated to provide

27 WAV service, much less equivalent service or a fleet of WAVs.  Rather, Section 12184 prohibits

28 the purchase or lease of new, inaccessible vans in some circumstances.  The statute's text, the

1    legislative history, and the relevant regulations all show that "equivalent service" is a *defense* to an

2    accusation that a covered entity's purchase and use of a brand new, *inaccessible van* constitutes

3    discrimination.  There is no affirmative obligation to provide equivalent service under the ADA,

4    and Plaintiffs cannot obtain an order enjoining Uber to take actions beyond what the ADA requires.

5    Thus, even assuming *arguendo* that Uber may have an obligation under the ADA to provide *some*

6    WAV service in New Orleans, Uber has no obligation under the ADA to provide (or cause others

7    to provide) the "equivalent service" or the 30–60 vehicle fleet Plaintiffs demand.

8        *Finally*, Plaintiffs' conclusory accusations that Uber violated Title III of the ADA by failing

9    to providing necessary auxiliary aids, failing to provide information about its services, and failing

10   to remove undisclosed barriers, are unsupported.  None of Plaintiffs' allegations so much as

11   implicates those obligations.  The duties to provide necessary auxiliary aids and information about

12   services relate to the need to communicate information effectively to individuals who perceive

13   information differently, such as individuals with hearing or vision impairments.  Plaintiffs do not

14   allege that they have hearing or vision impairments or any other reason to plausibly suggest that

15   they have any need for assistance to communicate with Uber or learn about its services.  Nor do

16   Plaintiffs claim that they sought and were denied such unneeded assistance.  In addition, Congress

17   made clear in the ADA that the obligation to remove barriers *is not* an obligation to provide vehicles

18   ramps or lifts.  Which is to say, making a vehicle a WAV is not the sort of "barrier removal" with

19   which the ADA is concerned.

20       For these reasons, and others discussed below, Plaintiffs fail to state any claim for which

21   relief may be granted.  Accordingly, the Court should dismiss the Second Amended Complaint with

22   prejudice.

23                    **SUMMARY OF PLAINTIFFS' ALLEGATIONS**

24       Uber is a technology company that creates and runs several successful smartphone

25   applications.  Plaintiffs' allegations relate to only a pair of those technologies, the Uber Rider App

26   and the Uber Driver App (the "Uber Apps").  The Uber Apps network independent, third-party

27   transportation providers ("Drivers") and riders, and facilitates payments between them.  *See* SAC

28   ¶¶ 4, 21.  Drivers, not Uber, own the cars they use to transport riders.  *See id.* ¶¶ 4, 36; *see also*

1   *Greater Hous. Transp. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 677 (S.D. Tex. 2015) ("Uber does

2   not own vehicles or employ drivers.").

3        Plaintiffs live in New Orleans, do not drive, and rely on public transportation.  SAC ¶¶ 1–

4   3.  They allege this is due to their "need for a motorized wheelchair that cannot be folded up and

5   be placed in a car's trunk."  *Id.* ¶ 7.  Plaintiffs have not used Uber's technology and have never

6   even downloaded the Uber Rider App.  *Id.* ¶ 165.

7        In select markets, Uber has voluntarily taken the lead in enabling increased access to WAV

8   rides.  Due to the efforts of Uber, and the efforts of individuals and entities that own or have WAVs

9   and sell rides, persons in motorized wheelchairs can obtain rides on demand by including a "WAV"

10  option that enables Drivers to offer and riders to request WAV rides.  *See id.* ¶ 65.  For a variety of

11  business reasons, Uber has not included a WAV option in the Uber Rider App in New Orleans.

12  Because the Uber Rider App in New Orleans does not yet include a WAV option, *id.* ¶ 20, Plaintiffs

13  allege they cannot benefit from the Uber Rider App, *id.* ¶¶ 7–8.

14       In the First Amended Complaint, Plaintiffs alleged that Uber violates both Sections 12182

15  and 12184 of the ADA by not guaranteeing WAV service in New Orleans.  ECF No. 54.  In addition

16  to dismissing Plaintiffs' claim under Section 12182, the Court held that Plaintiffs failed to state a

17  claim under Section 12184 because they failed to allege that they requested a "reasonable

18  modification" to Uber's policies, practices, and procedures prior to filing suit.  ECF No. 84.

19       In the SAC, Plaintiffs assert a single claim against Uber—violation of Section 12184.

20  Because of the Court's previous ruling, Plaintiffs no longer pursue their claim that Uber violated

21  Section 12182 and instead allege only that Uber violated only Section 12184.  *See* SAC ¶ 109 n.20.

22  Instead, Plaintiffs insist that, to comply with the ADA, Uber must immediately build, maintain, and

23  operate a fleet of 30–60 WAVs in New Orleans; and ensure that registered riders (which Plaintiffs

24  are not) are able to request WAV rides via the Uber Rider App *and* receive WAV service that

25  complies with 49 C.F.R. § 37.105. SAC ¶¶ 74–75 & Ex. E.

26                                    **ARGUMENT**

27       Rule 12(b)(6) tests the legal sufficiency of a plaintiff's allegations.  *Bell Atl. Corp. v.*

28  *Twombly*, 550 U.S. 544, 570 (2007).  Accepting all factual allegations as true and disregarding any

1   implausible, contradictory, or conclusory assertions, the complaint must "raise a right to relief

2   above the speculate level." *Id.* at 555.  "[O]nly a complaint that states a plausible claim for relief

3   survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

4        The Court should dismiss Plaintiffs' SAC with prejudice because Plaintiffs lack a private

5   right of action under the ADA.  Alternatively, the Court should dismiss Plaintiffs' claims because

6   Plaintiffs failed as a matter of law to demand a "reasonable modification" of Uber's practices,

7   policies, and procedures, and failed to state a claim based on the denial of auxiliary aids and

8   services, failure to remove architectural barriers, or a violation of 49 C.F.R. § 37.167.

9   **I.    PLAINTIFFS LACK A PRIVATE RIGHT OF ACTION.**

10        Private litigants may sue to enforce federal law only if and to the extent Congress has

11   authorized them to do so.  *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).  Congress alone

12   decides whether, in what circumstances, and by whom federal laws are privately enforceable.  *Id.*

13   As with all matters of congressional intent, courts determine the scope of a right of action using the

14   ordinary tools of statutory interpretation.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

15   572 U.S. 118, 128 (2014).  Thus, the inquiry begins with the text of the statute creating the right of

16   action.  *Id.*; *Sandoval*, 532 U.S. at 288; *see Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54

17   (1992).

18        In Title III of the ADA, Congress authorized suits by two classes of private persons: (i) "any

19   person who is being subjected to discrimination on the basis of disability in violation of this

20   subchapter [42 U.S.C. Ch. 126, Subch. III]" and (ii) "any person … who has reasonable grounds

21   for believing that such person is about to be subjected to discrimination in violation of section

22   12183 of this title."  42 U.S.C. § 12188(a)(1).  These two classes differ in terms of both who may

23   sue *and* the types of alleged discrimination they may sue to remedy.  A person who "is being"

24   subjected to discrimination may sue when the alleged discrimination violates any part of Title III

25   ("of this subchapter").  *Id.*  By contrast, a person who believes she or he "is about to be" subjected

26   to discrimination may sue only for alleged discrimination concerning the design, construction, or

27   alteration of commercial facilities ("of section 12183 of this title").  *Id.*; *see* 42 U.S.C. § 12183.

28

Thus, by its plain language, Section 12188(a)(1) provides a broad right of action to private plaintiffs are being subjected to discrimination, and provides a more limited right of action to private persons who anticipate the alleged discrimination, but who have not yet been subjected to it.  *See Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1284 n.18 (M.D. Fla. 2004) ("Section 12188(a)'s reference to persons 'about to be subjected' to discrimination is a reference to potential violations of section 12183.").  Section 12188(a)(1) is unambiguous in this regard, and its plain meaning is confirmed by legislative history and regulatory guidance.

Starting with legislative history, an early draft of Title III of the ADA would have provided a broader private right of action for any person "who is being or has reasonable grounds for believing that he or she is about to be subjected to discrimination on the basis of disability *in violation of title III.*"  H.R. Rep. No. 101-485, 125, *as reprinted in* 1990 U.S.C.C.A.N. 303, 408 (emphasis added).  Because of concerns as to the scope of suits available for someone who believes she is "about to be subjected" to discrimination "in cases other than new construction or alterations of buildings," the provision creating Title III's private right of action was amended to its present, narrower form.  136 Cong. Rec. H2599-01 (daily ed. May 22, 1990) (Statement of Rep. Fish), 136 Cong. Rec. H2599-01, at *H2624, 1990 WL 67606.[1]  This amendment was heralded as an important and reasonable limitation.  136 Cong. Rec. H2599-01 (daily ed. May 22, 1990) (Statement of Rep. Gingrich), 136 Cong. Rec. H2599-01, at *H2631, 1990 WL 67606 (explaining that under the amendment "anticipatory discrimination claims are limited to new construction").

At the same time, Congress added to right-of-action provision the language that gave rise to the concept of deterrent-effect standing in ADA cases: "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1).  This language was "inserted to clarify the circumstances when the 'about to be language' would be applicable" by referring to "well-established doctrine" under Title VII of the Civil Rights Act.  136 Cong. Rec. H2599-01 (daily ed. May 22, 1990) (Statement of Rep. Fish), 136 Cong. Rec. H2599-01, at *H2624, 1990 WL 67606.  In this way, the "futile gesture" provision

---

[1]     For the Court's reference, Uber appends an appendix of the relevant legislative history.

1    "does no more than clarify the previous sentence's statement that a plaintiff 'about to be subjected

2    to discrimination' may sue." *Moreno v. G & M Oil Co.*, 88 F. Supp. 2d 1116, 1117 n.1 (C.D. Cal.

3    2000).  And the only time someone "about to be subjected to discrimination" may sue is if they're

4    claiming a violation of Section 12183.  42 U.S.C. § 12188(a)(1); *see Rodriguez*, 305 F. Supp. 2d at

5    1284 & n.18.

6          Shortly after Title III was enacted, the Department of Justice similarly recognized that the

7    right of action available to persons who are "about to be" subjected to discrimination is limited to

8    claims relating to the construction or alteration of commercial facilities.  *Nondiscrimination on the*

9    *Basis of Disability by Public Accommodations & in Commercial Facilities*, 56 Fed. Reg. 35544-01,

10   35589 (July 26, 1991).  The DOJ explained: "[t]o avoid unnecessary suits, this section requires that

11   the individual bringing the suit have 'reasonable grounds' for believing that a violation is about to

12   occur, but does not require the individual to engage in a futile gesture if he or she has notice that a

13   person or organization covered by title III of the Act does not intend to comply with its provisions."

14   *Id.*

15         Here, at most, Plaintiffs allege anticipatory—*i.e.*, "about to be"—discrimination.  Plaintiffs

16   do not claim that they have been or are "being" subjected to the alleged discrimination.  They have

17   never used or even downloaded the Uber Rider App.  SAC ¶ 165.  Rather, Plaintiffs allege they are

18   "deterred" from using and even downloading the Uber Rider App because they have "personal

19   knowledge" that the Uber Rider App does not include a WAV option in New Orleans.  *Id.* ¶¶ 45,

20   166.  And because they "experienced the difficulty and frustration of past denials of services,

21   including transportation services, in *other contexts*," Plaintiffs allege that they "chose not to engage

22   in a process they know to be futile with Uber." *Id.* ¶ 167 (emphasis added).  That is not an allegation

23   that Plaintiffs are "being subjected to discrimination."  Rather, at most, Plaintiffs allege they are

24   "about to be subjected" to discrimination.  *See Chapman v. Pier 1 Imports*, 631 F.3d 939, 951 (9th

25   Cir. 2011) (en banc).  They could therefore sue about "discrimination in violation of section 12183,"

26   42 U.S.C. § 12188(a)(1), which deals with the construction and alterations of *physical facilities*,

27   *see* 42 U.S.C. § 12183.  Yet, Plaintiffs allege purported discrimination in violation of *Section 12184*

28   *only*.  SAC ¶¶ 148–68.

1    Where, as here, Congress has delimited the private right of action, courts may not go beyond

2    the limits Congress set "no matter how desirable that might be as a policy matter, or how compatible

3    with the statute." *Sandoval*, 532 U.S. at 286–87; *accord Lexmark*, 572 U.S. at 128 ("We do not

4    ask whether in our judgment Congress *should* have authorized [a litigant]'s suit, but whether

5    Congress did in fact do so.") (emphasis in original).  Because Plaintiffs allege only that they are

6    "about to be subjected" to discrimination, they lack a private right of action to sue for alleged

7    violations of Section 12184.  Accordingly, the SAC should be dismissed for failure to state a claim.

8    ## II.   PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT THEY HAVE BEEN
         DENIED ANY REASONABLE MODIFICATIONS.

9    In the related case styled *Crawford v. Uber Technologies, Inc.*, No. 3:17-cv-06124-RS

10   (N.D. Cal.), this Court concluded that an entity subject to Section 12184 may be obligated to

11   provide WAV service as a "reasonable accommodation" to an individual with a disability.

12   *Crawford*, ECF No. 80 at 8 (citing 42 U.S.C. § 12184(b)); *accord Crawford*, ECF No. 99 at 4.

13   Consistent with this Court's decision in *Crawford*, to state a claim under Section 12184 Plaintiffs

14   must plausibly allege that Uber failed to make "reasonable modifications" to its policies.[2]  Uber

15   disputes that it is an entity "primarily engaged in the business of transporting people," but even if

16   it were such an entity, Plaintiffs fail to state a claim.

17   As an initial matter, Uber responded to Plaintiffs' letter request modifications by referring

18   Plaintiffs to actual transportation companies that offer WAV service in New Orleans.  Ex. A.[3]  As

19   a matter of law, it is reasonable for a covered entity to "refer an individual with a disability to

20   another" entity, when the "individual is seeking, or requires, treatment or services outside of the

---

[2]    Title I of the ADA speaks to "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A) (emphasis added).  Title III of the ADA, however, is more limited; it speaks to "reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford" services "to individuals with disabilities," 42 U.S.C. § 12182(b)(2)(A)(ii) (emphases added).  *See Montalvo v. Radcliffe*, 167 F.3d 873, 876 n.2 (4th Cir. 1999) ("Title III of the Americans with Disabilities Act does not impose a requirement that a place of public accommodation provide a "reasonable accommodation" for a disability, but rather that, in limited circumstances, it make reasonable modifications.").

[3]    This Court may consider Uber's response to Plaintiffs' letter because the response is integral to Plaintiffs' allegations in their complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

1    referring [entity]'s area of specialization, and if, in the normal course of its operations, the referring

2    [entity] would make a similar referral for an individual without a disability who seeks or requires

3    the same treatment or services." 28 C.F.R. § 36.302(b)(1). That is exactly what Uber did. Uber

4    does not provide transportation services at all, and as Plaintiffs allege, the Uber Rider App in New

5    Orleans does not include a specific "WAV" option through which riders may request WAV rides

6    from independent Drivers. For this reason alone, Plaintiffs' fail to state a claim.

7      Moreover, as explained below, the modifications Plaintiffs requested—that Uber provide

8    "equivalent service" under 49 C.F.R. § 37.105 and ensure a fleet of 30–60 WAVs is available in

9    seven days' time—patently are not "reasonable" modifications. On the contrary, the ADA does

10    not entitle Plaintiffs to the relief they seek as a matter of law.[4]

11      **A.    Plaintiffs' Demand For "Equivalent Service" Is Unreasonable As A Matter Of Law.**

12

13      Section 12184 applies to entities that are "primarily engaged in the business of transporting

people" and prohibits "discrimination." 42 U.S.C. § 12184(a). "Discrimination" is defined, and the

14   definitions make clear that providing transportation in "automobiles" that are not accessible to

15   passengers in wheelchairs (*i.e.*, that are not WAVs), is *not* discrimination. 42 U.S.C. § 12184(b)(3).

16   Thus any for-hire vehicle service may maintain a "fleet consisting *entirely* of non-accessible

17   vehicles [and] be in accord with the ADA." *Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir.

18   2006) (emphasis added) (citing 42 U.S.C. § 12184(b)(3)). This reality, which is expressly

19   incorporated into the statute, reflects a "policy choice of the political branches" to "exempt[] the

20   taxi industry from the ADA," at least when it comes to providing WAVs. *Noel v. New York City*

21   *Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012).

22

23      Against this backdrop, and from the plain text, it is clear that Section 12184(b)(3) and (b)(5)

24   do not require covered entities to provide "equivalent service" (or in fact any WAV service at all).

25   Rather, by defining the failure to do so as "discrimination," these subsections require covered

entities *that choose to purchase or lease* new vans to ensure that *those new vans* are accessible. *See*

26

---

[4]    By arguing that Plaintiffs' claims fail even assuming Uber were subject to Section 12184,

27   Uber does not concede that it is subject to Section 12184. For the avoidance of doubt, Uber does

not waive and expressly reserves any argument regarding the scope or applicability of

28   Section 12184 in this action.

1    H.R. REP. 101-485, 40, *reprinted in* 1990 U.S.C.C.A.N. 267, 284 ("Section [12184](b)(3) requires

2    private entities ... to purchase new vehicles  (other than automobiles, vans with seating capacities

3    of less than 8 passengers, including the driver, or over-the-road buses) ...  which are readily

4    accessible to and usable by individuals with disabilities"); *id.* ("Section [12184](b)(5)  requires a

5    van .... to be purchased or leased by a private entity so that it is readily accessible to and usable by

6    an individual with a disability").

7           Providing "equivalent service" is a potential *defense* to liability when a covered entity that

8    chooses to purchase or lease a new van that is *not a WAV*.  As the statute makes clear, "the new van

9    need not be readily accessible to and usable by such individuals [who use wheelchairs] *if the entity*

10   *can demonstrate that the system for which the van is being purchased or leased, when viewed in its*

11   *entirety, provides a level of service to such individuals equivalent to the level of service provided*

12   *to the general public*."    42 U.S.C. § 12184(b)(5) (emphasis added); *accord* 42 U.S.C.

13   § 12184(b)(3).

14          Plainly read, the references to "equivalent service" in Sections 12184(b) and 49 C.F.R. §

15   37.103(d) concern a potential *defense* to liability for covered entities who choose to purchase a

16   "new van" that is not a WAV.  In this way, Section 12184 never *requires* any covered entity to

17   provide equivalent service; it gives covered entities the opportunity to purchase new, inaccessible

18   vans without triggering ADA liability when such a purchase would not materially impact the

19   accessibility of the transportation system as a whole.

20          Applicable regulations are in accord.  The Department of Transportation has explicitly

21   declared that "[p]roviders of taxi services are not required to purchase or lease accessible

22   automobiles," 49 C.F.R. § 37.29(b), and, for purposes of that regulation, "taxi service" includes

23   any for-hire vehicle service, 49 C.F.R., Pt. 37, App'x D.  However, "*[w]hen* a provider of taxi

24   service purchases or leases a vehicle other than automobile, the vehicle is required to be accessible

25   *unless* the provider demonstrates equivalency as provided in [49 C.F.R.] § 37.105," but such a

26   provider "is not required to purchase vehicles other than automobiles in order to have a number of

27   accessible vehicles in its fleet."  49 C.F.R. § 37.29(b) (emphases added).

28

1    Despite the explicit, unambiguous statutory text and implementing regulations, Plaintiffs

2    assert that 49 C.F.R. § 37.103(d) somehow also requires every for-hire vehicle service's "overall

3    transportation service" to meet the "equivalent service" standard in 49 C.F.R. § 37.105.

4    SAC ¶ 143.[5]  But that regulation confirms that the purpose of these provisions is to ensure the

5    accessibility of new vans, not to impose an equivalent service obligation on any entity subject to

6    Section 12184:

7    
8    **(d) Vans with a capacity of fewer than 8 persons.** If the entity operates either a fixed route or demand responsive system, and *purchases or leases a new van* with a seating capacity of fewer than eight persons including the driver (the solicitation for the vehicle being made after February 25, 1992), *the entity shall ensure that the vehicle is readily accessible* to and usable by individuals with disabilities, including individuals who use wheelchairs, *unless the system, when viewed in its entirety, meets the standard for equivalent service* of § 37.105 of this part.

9    
10   

11   49 C.F.R. § 37.103(d) (emphases added).  As in Section 12184 itself, the reference to "equivalent

12   service" in 49 C.F.R. § 37.103(d) plainly concerns a potential defense to liability for covered

13   entities who choose to purchase a "new van" that is not a WAV.

14   A thought experiment clarifies the point.  Consider a traditional livery company that owns

15   a fleet of 100 limousines—none of which is accessible to motorized wheelchair users.  So far so

16   good: the livery company need not provide any WAV service and may maintain a fleet of entirely

17   inaccessible vehicles without violating Section 12184.  *See Toomer*, 443 F.3d at 1195.  Then, to

18   expand its service offerings, the livery company decides to purchase a new, non-WAV van and

19   adds it to its fleet.  That is an instance of discrimination, as defined by Section 12184.  But the

20   violation is *not* the failure to provide equivalent service; it is the purchase of an inaccessible van

21   for use in the company's transportation service.

---

22   [5]    Plaintiffs' assert that 49 C.F.R. § 37.105 somehow applies to because Xchange Leasing,

23   LLC, a different entity that used be an Uber subsidiary, *leased to* Drivers outside Louisiana "new" minivans from 2015 to January 30, 2018.  SAC ¶¶ 139–43.  That theory doesn't hold up.  First, and

24   most fundamentally, the equivalent service standard is only potentially relevant to the "purchase or *lease by such entity*" of a new van, not the purchase from such entity or *lease to* such entity.

25   42 U.S.C. § 12184(b)(3), (b)(5) (emphasis added).  When Congress meant *lease to*, in addition to lease by, it said so explicitly. *See* 42 U.S.C. § 12182(a) (applying to any person "who owns, *leases*

26   *(or leases to)*, or operates a place of public accommodation) (emphasis added).  Second, even under their own theory, Plaintiffs would have to allege that Xchange leased *inaccessible vans* to trigger

27   its application, but they do not make even that allegation.  And third, Plaintiffs do not allege that any defendant leased any vehicles to anyone, much less to anyone in New Orleans; they allege that

28   a separate entity and former subsidiary of Uber's leased vehicles to Drivers exclusively outside of Louisiana.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
                                                                                SECOND AMENDED COMPLAINT

1    In short, Plaintiffs demanded a modification—equivalent service—that Section 12184

2  expressly *does not require* of covered entities.  That is not a request for a "reasonable" modification.

3  Rather, by seeking a modification that is directly contrary to the "policy choice of the political

4  branches"—to not mandate WAV service at all, much less equivalent service—Plaintiffs seek a

5  modification that would require the Court to rewrite Section 12184.  *Noel*, 687 F.3d at 73.  On its

6  face, that is an unreasonable modification.

7    Indeed, the ADA does not authorize the Court to order the modification Plaintiffs demand.

8  "The scope of injunctive relief is dictated by the extent of the violation established."  *Lewis v.*

9  *Casey*, 518 U.S. 343, 360 (1996).  With the hypothetical livery company, the appropriate relief to

10  remedy discrimination in the form of purchasing or leasing a new, non-WAV van without

11  demonstrating equivalent service would be an order to retrofit the new, inaccessible van to make it

12  accessible or to remove the van from the company's fleet.  In contrast, a mandatory injunction

13  requiring the livery company—and only that livery company—to provide "equivalent service"

14  based on the purchase of a few vans would go well beyond remedying its discrimination.  The Court

15  lacks the authority to enter such an order.  *See, e.g.*, *California v. Azar*, 911 F.3d 558, 584 (9th Cir.

16  2018) ("The scope of the remedy must be no broader and no narrower than necessary to redress the

17  injury shown by the plaintiff states.").

18    Neither Section 12184 of the ADA nor its implementing regulations ever authorize a court

19  to enter an order requiring a covered entity to provide equivalent service.  And no court has ever

20  entered such an order before.  Plaintiffs' demand for equivalent service fails to state a claim.

21    **B.    Plaintiffs' Demand For 30–60 WAVs In A Week Is Patently Unreasonable.**

22    The other modification Plaintiffs requested was for *Uber* to ensure that a fleet of 30–60

23  WAVs was available to seek and accept ride requests via the Uber Rider App in New Orleans, and

24  to do so in just seven days.  SAC ¶ 75.  Plaintiffs' demand is so implausible, and so contrary to

25  common sense and the law, that the Court can rule at the pleading stage that this demand is

26  unreasonable.

27    The implausibility begins by recognizing what the ADA undisputedly does not require and

28  what it does permit.  The Act does not require the purchase or lease of WAVs.  42 U.S.C.

1   § 12184(b)(3), (b)(5); 49 C.F.R. § 37.29(b).  And the Act permits the operation of a fleet consisting

2   of only inaccessible vehicles.  *Toomer*, 443 F.3d at 1195.  As a result, to comply with Plaintiffs'

3   demand, Uber would need to make 30–60 WAVs available in some way short of purchasing or

4   lease WAVs (and hiring people to drive them) itself.  That would be an end-run around the "policy

5   choice of the political branches" not to require covered entities to provide WAV service at all.

6   *Noel*, 687 F.3d at 73.  And even that hurdle aside, Plaintiffs' allegations show that it would be

7   implausible and unreasonable for Uber to do so, especially in just seven days.

8        Plaintiffs propose two ways for Uber to do so: contracting with third parties to provide

9   WAV service (SAC ¶¶ 117–21) and providing incentives to Drivers (*id.* ¶¶ 122–25), presumably

10  to encourage people with WAVs to sign up as Drivers and/or to encourage people to purchase

11  WAVs and use them to see and accept rides requested via the Uber Rider App.  No provision of

12  the ADA requires these steps or anything like them.  But even working from Plaintiffs' false

13  premise that Uber has "infinite resources" to work with, *id.* ¶ 66, common sense dictates that it is

14  implausible that those mechanisms could create a significant WAV ridesharing market in just seven

15  days.  *Cf. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (Judges are "not required

16  to exhibit a naiveté from which ordinary citizens are free").

17       In their complaint, Plaintiffs refer to contracts Uber has entered into relating to other cities

18  where Uber has enabled third party companies to make their WAV services available on the Uber

19  Rider App.  *See, e.g.*, SAC ¶ 118 (alleging that, in Cincinnati, Uber hired a company to have a

20  *single* WAV available 24 hours a day in exchange for payment of up to $32.71 per hour).  Plaintiffs

21  do not identify any potential contractors in New Orleans that could provide such a service or even

22  allege that there are any such potential contractors.  To the contrary, Plaintiffs suggest that Uber

23  issue a "request for providers" to see if any such companies exist and are interested.  *Id.* ¶ 120.  A

24  deal of that size could not possibly, much less plausibly, be bid upon, drafted, and executed in just

25  one week.  One must suspend disbelief to conclude that Uber and this yet-unknown-third-party

26  could create the operations and logistical infrastructure necessary to actually ensure the 30–60

27  specially outfitted WAVs are on the road and available to accept ride requests via the Uber Rider

28  App in such a comically short period of time.  The Court should reject Plaintiffs' demand as

fanciful. *See Gottschalk v. City & Cty. of San Francisco*, 964 F. Supp. 2d 1147, 1158 (N.D. Cal. 2013) ("A court may dismiss as frivolous, claims that are clearly baseless, fanciful, fantastic, or delusional.").

Nor can incentives create a viable WAV market in just seven days. Plaintiffs' allegations show that it takes substantial time for the incentives to successfully attract WAV Drivers. As Plaintiffs allege, Uber had 65 Drivers with WAVs logging into the Uber Rider App in Chicago. *See* SAC ¶ 66. Uber achieved this result in a city with a population much larger than New Orleans after it ran "promotions seeking the retention of drivers with WAV vehicles" over a 12-month period. *Id.* There is absolutely no reason to believe that incentives would push 30–60 current and/or potential Drivers to go out and purchase WAVs and sign up to seek and accept ride requests via the Uber Rider App in New Orleans at all, and certainly not in one week.

Discovery is unnecessary to show Plaintiffs' demand for 30–60 WAVs in seven days is unreasonable. The Court can reach that conclusion using common sense alone. As such, Plaintiffs' demand for Uber to amass and make a fleet of WAVs available fails to state a claim.

## III.   PLAINTIFFS' UNDEVELOPED, THROWAWAY ASSERTIONS OF OTHER ADA VIOLATIONS FAIL TO STATE A CLAIM.

At the end of their complaint, Plaintiffs include a hodgepodge of alleged violations of other provisions of Title III of the ADA. With little elaboration, Plaintiffs allege that Uber engaged in discrimination by failing to (a) provide auxiliary aids, (b) comply with the requirements of 49 C.F.R. § 36.167(f) regarding communications about transportation services, and (c) remove certain barriers. SAC ¶¶ 153–54, 157. Plaintiffs fail to state a claim for violation of any of these requirements.

### A.   Plaintiffs' Claim Does Not Involve a Failure to Provide Auxiliary Aids.

Title III requires covered entities to provide "auxiliary aids and services where necessary to ensure *effective communication* with individuals with disabilities." 28 C.F.R. § 36.303(c)(1) (emphasis added); *see* 42 U.S.C. § 12184(b)(2)(B). The auxiliary aids with which the ADA is concerned are those that promote effective communication with individuals who have hearing or vision impairments. *See* 42 U.S.C. § 12103(1) (defining auxiliary aids as including "methods of

making aurally delivered materials available to individuals with hearing impairments" and "methods of making visually delivered materials available to individuals with visual impairments").

This case has nothing to do with auxiliary aids or services. Neither Plaintiff alleges to have a hearing or vision impairment. And Plaintiffs do not—and cannot—allege that the Uber Rider App is not accessible to individuals with hearing or vision impairments. Plaintiffs do not allege that Uber has communicated with them, much less that such unalleged communication was ineffective and that Uber refused to use a method to ensure effective communication. Plaintiffs have not stated a plausible claim that Uber failed to provide them auxiliary aids or services necessary to ensure effective communication.

**B.      Plaintiffs Do Not Allege Any Failure to Communicate With Individuals With Disabilities Under 49 C.F.R. § 37.167(f).**

Plaintiffs allege a violation of 49 C.F.R. § 37.167(f), a regulation issued by the DOT covering "[o]ther service requirements." SAC ¶ 157. But that regulation, like the requirement to provide auxiliary aids, relates only to covered entities' obligations to communicate effectively with individuals with disabilities. 49 C.F.R. § 37.167(f) ("The entity shall make available to individuals with disabilities adequate information concerning transportation services."). In particular, the DOT explains that the obligation "includes making adequate communications capacity available, through accessible formats and technology, to enable users to obtain information and schedule service." *Id.*

The regulation does not impose any substantive obligation regarding the underlying transportation service. Plaintiffs cannot bootstrap their (fundamentally flawed) claim regarding a violation of a Section 12184 to allege a violation of 49 C.F.R. § 37.167(f).

**C.      Plaintiffs Have Not Stated A Cause of Action Based on a Failure to Remove Barriers.**

Plaintiffs also have not alleged that Uber has failed to "remove barriers" under Section 12184(b)(2)(C). "Barriers" is not a catch-all term in the statute; it refers to particular "architectural" and "structural" barriers as defined in Sections 12182(b)(2)(A) and 12183(a)(2). *See* 42 U.S.C. § 12184(b)(2)(C) (cross-referencing those subsections). When it comes to transportation, a covered entity is required to remove "transportation barriers in existing vehicles

14

1  and rail passenger cars used by an establishment for transporting individuals" if such removal is
2  "readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).

3        The only *structural* barrier Plaintiffs complain of is the alleged lack of "lift-equipped
4  vehicles" that can be requested via the Uber App.  SAC ¶ 45.  The ADA does not require Uber to
5  remove this barrier for at least three reasons.

6        *First*, the ADA expressly does not require covered entities to retrofit vehicles to add lifts to
7  accommodate motorized wheelchairs.  Congress expressly excluded from the obligation to remove
8  "transportation barriers in existing vehicles" any obligation to remove "barriers that can only be
9  removed *through the retrofitting of vehicles ... by the installation of a hydraulic or other lift*."
10  42 U.S.C. § 12182(b)(2)(A)(iv) (emphasis added).  Thus, the DOT has explicitly recognized that
11  this provision "does not require that inaccessible vehicles be retrofitted with lifts, ramps or other
12  boarding devices."  49 C.F.R. § 38.171.

13        *Second*, any obligation to remove barriers applies only to vehicles "used by an *establishment*
14  for transporting individuals."  However, neither Uber nor the Uber Rider App is an "establishment."
15  As the Court has already recognized, "Uber's transportation services" do not involve an "actual,
16  physical place where goods or services are open to the public."  *Namisnak v. Uber Techs., Inc.*,
17  No. 17-CV-06124-RS, 2018 WL 7200717, at *4 (N.D. Cal. Oct. 3, 2018).  Like "place," the word
18  "establishment" connotes only real, physical spaces.  WEBSTER'S THIRD NEW INT'L DICTIONARY
19  778 (1986) ("establishment" means "a more or less fixed and usu[ally] sizable place of business or
20  residence").  Thus, any obligation to remove barriers does not apply to the Drivers that own vehicles
21  and use the Uber Driver App to get leads, let alone Uber.

22        *Finally*, Uber does not use any "existing vehicles" for transporting people.  Drivers, rather
23  than Uber, use vehicles for transporting people.  *See* SAC ¶¶ 4, 36.  Uber does not own, possess, or
24  control any vehicles used for transportation in New Orleans.  As such, there are no barriers in
25  existing vehicles that Uber may be ordered to retrofit.

26        Thus, Plaintiffs' allegations regarding the lack of WAV service in New Orleans do not state
27  a claim under Section 12184(b)(2)(C).

28

1

### CONCLUSION

2          For the foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed with

3    prejudice.

4

5    Dated: December 17, 2019                    Respectfully submitted,

6                                                MORGAN, LEWIS & BOCKIUS LLP

7                                                By:  s/ Anne Marie Estevez
                                                 _____
8                                                    Anne Marie Estevez
                                                     Stephanie Schuster
9                                                    Patrick Harvey
                                                     Clara Kollm
                                                     Kathy H. Gao
10
11                                                   *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28