# EXHIBIT A

# Morgan Lewis

**Anne Marie Estevez**
Partner
+1.305.415.3330
annemarie.estevez@morganlewis.com

November 13, 2019

<u>Via Email</u>

Garret S. DeReus
Bizer & DeReus
3319 St. Claude Avenue
New Orleans, LA 70117
gdereus@bizerlaw.com

Re:   Stephan Namisnak and Francis Falls

Dear Counsel:

     I write on behalf of Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber") to respond to your letter dated September 22, 2018. As the parties agreed last year, Uber's obligation to respond to that latter was suspended for the duration of the stay in *Namisnak v. Uber Technologies, Inc.*, No. 17-6124 (N.D. Cal.). As of October 30, 2019, the litigation is no longer stayed.

     In their September 22, 2018 letter, Stephan Namisnak and Francis Falls ask Uber to (i) "utilize its resources, internal knowledge, and business know-how to change its operational policies and provide WAV service in New Orleans, Louisiana and its surrounding areas" by September 29, 2018 (seven days after the date of your letter); (ii) "ensure that a fleet of approximately 30-60 WAV vehicles are available in New Orleans" by September 29, 2018; and (iii) ensure that "any UberWAV service Uber provides in New Orleans meet the equivalency standard of 49 C.F.R. § 37.105."

     Before addressing the specific demands in your letter, it is important to explain Uber's business model. Uber develops smartphone applications, software, and other technological solutions for various industries, including the restaurant industry (Uber Eats), the commercial trucking industry (Uber Freight), the healthcare industry (Uber Health), public transit systems (Uber Transit), the shift/temp work industry (Uber Works), and the ridesharing industry. For the ridesharing industry, a pair of smartphone applications—the Uber Driver App and the Uber Rider App (collectively, the "Uber Apps") network independent individuals seeking rides ("Riders") with independent, third-party transportation providers ("Drivers") looking to provide rides for profit. The Uber Apps are the Uber technology that we understand to be the subject of your September 22, 2018 letter.

     Uber's relationship with independent Drivers is not an employment relationship. Drivers pay Uber a fee to license Uber's technology and related services. Their use of the Uber Driver App is subject to the terms and conditions of that license. Drivers are independent actors, who are free to choose whether to use the Uber Driver App to seek and accept ride requests, what types of vehicles

November 13, 2019
Page 2

to acquire and use, and when and where to log on to the Uber Driver App to seek and accept ride requests. Indeed, because Drivers are not employed by and do not work for Uber, they may (and often do) choose to use the Uber Driver App as well as similar ridesharing smartphone applications offered by Uber's competitors (*e.g.*, Lyft).

Uber does not own the vehicles Drivers choose to use when they are logged on to the Uber Driver App and seeking and accepting ride requests. Drivers obtain those vehicles on their own. Some Drivers work for commercial transportation providers and use vehicles owned by those entities. Some Drivers temporarily rent vehicles to use to provide transportation to riders they connect with via the Uber Driver App and/or another ridesharing smartphone application. And many Drivers simply use their personal vehicles—*i.e.*, the same vehicle they purchased or leased to get to work, pick up groceries, drop their kids off at school, and so forth.

Uber is proud that, by making it easier for sellers and buyers to network among themselves, and by developing technology with accessibility in mind, the Uber Apps have increased mobility options and economic opportunities for individuals with disabilities. For example, the Uber Apps are compatible with mobile screen-reading technology (VoiceOver for iOS and Talkback for Android); are compatible with wireless braille displays; are fully functional without audio; and offer visible and vibrating alerts. In some cities, Uber has launched an experimental option within the Uber Apps called uberASSIST, through which riders who are seniors or who need help getting into vehicles and/or stowing their belongings (like folding wheelchairs, walkers, canes, and scooters) may request rides from Drivers who are specially trained to assist with these activities.

Among its peers, Uber also is at the forefront when it comes to enabling increased access to rides in wheelchair-accessible vehicles. Right now, Uber is experimenting with an option within the Uber Apps called "WAV," which is designed to enable riders to specifically request rides from Drivers who possess and choose to make available their wheelchair-accessible vehicles. For now, the WAV pilot is limited to a few major markets, like New York City, the District of Columbia, Chicago, Philadelphia, Boston, Los Angeles, and San Francisco.

Uber has learned that WAV marketplaces present unique challenges. Few Drivers possess wheelchair-accessible vehicles. These vehicles are expensive to acquire, maintain, and operate. Most Drivers have chosen not to make that investment because they prefer more affordable vehicles for personal and commercial use. At the same time, demand for WAV rides is low and geographically dispersed. As a result of these market dynamics, significant resources are required to enable a viable WAV marketplace in even the most densely and heavily populated markets. Even though Uber maintains that the law does not compel it to make that significant investment, it has voluntarily done so in certain markets, and in all of those markets, Uber loses money on every WAV trip enabled through its technology. These obstacles need to be studied and overcome before launching the WAV option in additional markets, like New Orleans.

Uber appreciates your clients' interest in the Uber Rider App, and Uber shares your clients' goal of enabling improved access to transportation options for individuals with disabilities. We reiterate, however, that Uber is not in the business of acquiring or maintaining vehicles for independent Drivers to use when seeking and accepting ride requests via the Uber Driver App. This is true in New Orleans and in every other US market in which the Uber Apps are available. Accordingly, Uber cannot "ensure that a fleet of" any vehicles, of WAVs or other vehicles, is "available in New Orleans" as your clients have requested. Nor is there a law that requires Uber to do so. If you are aware of such laws, we will consider them.

As to your clients' request that Uber "change its operation policies and provide WAV service in New Orleans, Louisiana and its surrounding areas," it appears you are alluding to the language in

November 13, 2019
Page 3

42 U.S.C. § 12182(b)(2)(ii). But not purchasing WAVs and hiring Drivers to drive them is not a "policy" (or "practice" or "procedure") contemplated by that statute. Rather, what your clients request as a purported change in "policies" is for Uber to operate a different business than it operates.

      Uber hopes the WAV option is a success in the pilot markets, and Uber aspires to be able to enable a WAV option in even more markets, including New Orleans, in the future, if it makes sense from a business perspective and a positive-impact perspective. Uber is not in a position to guarantee that either Drivers provide or that Uber itself "provide[s] WAV service in New Orleans" via the Uber Apps in WAVs, as your clients have requested. Uber does not provide vehicle service of any sort; Drivers who use the Uber Driver App provide service. What Uber can do, however, is refer individuals (with or without disabilities) who seek or require WAV services in New Orleans, like your clients, to an entity that does provide such services in the area. On Uber's behalf, we have included information on such providers below, and we ask that you promptly relay this information to your clients so they may make arrangements to meet their needs:

- Wheelchair Accessible Vans, www.txwheelchairvans.com, (504) 525-2800
- ACC Medlink, www.medic-trans.com, (800) 550-1025
- One Bunch Hook Up, LLC, www.onebunchhookup.com, (504) 309-1973
- Gulf States Transportation, www.gulfstatestransportation.net, (504) 451-4766
- RTA Paratransit, www.norta.com/accessibility/paratransit, (504) 827-7433

      Please do not hesitate to reach out to me if you have any additional questions, or if you or your clients believe there is a way to make WAV a viable option in the Uber Apps in New Orleans today. We welcome your and your clients' input on this important Uber initiative.

                                                          Sincerely,

                                                          *Anne Marie Estevez*

                                                          Anne Marie Estevez