UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN NAMISNAK, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-06124-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## I. INTRODUCTION

Stephen Namisnak and Francis Falls bring this action against Uber Technologies, Inc. and its subsidiary Rasier, LLC for failure to make reasonable accommodations under federal disability law. The case was stayed for a year while the parties attempted mediation. Defendants now move to dismiss the Second Amended Complaint ("SAC"), arguing plaintiffs have no private right of action, have not been denied reasonable modifications, and have otherwise failed to state a claim. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for April 2, 2020 is vacated. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

Uber operates a ride-for-hire service that utilizes a mobile phone application ("app") to connect riders with drivers who have signed up with the app. The Uber app offers users services which vary from locality to locality. In some cities, such as Portland, San Francisco, Los Angeles, and Washington, D.C., the app displays an icon called "Uber Access." When a user taps on the

icon, two options appear: "UberASSIST" and "UberWAV." UberASSIST connects app users with specially trained drivers who will assist riders into vehicles and can accommodate folding wheelchairs, walkers, and scooters. UberWAV offers app users the option to call a wheelchair-accessible vehicle, i.e. a "WAV."

Plaintiffs are persons with disabilities who live in New Orleans. Falls has paraplegia as the result of a spiral cord injury and is missing his right arm. Namisnak has muscular dystrophy. Both use electric wheelchairs for mobility. These wheelchairs cannot be folded or stored in the trunk of a car, because they are too heavy. Because plaintiffs cannot drive, they use public transportation to get around. Since the Uber app in New Orleans does not provide UberWAV, plaintiffs are unable to use the service.[1] Accordingly, plaintiffs allege, Uber has violated its obligations under the Americans with Disabilities Act ("ADA").

Plaintiffs have never downloaded the Uber app because they are aware UberWAV is not offered, and their electric wheelchairs do not fit into standard cars. If Uber were to offer in New Orleans a service, such as UberWAV, which accommodated electronic wheelchairs, plaintiffs would use it. They seek declaratory and injunctive relief under Title III of the ADA, 42 U.S.C. § 12181 *et seq*.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus,

---

[1] UberASSIST is also unavailable in New Orleans. However, plaintiffs allege they could not use UberASSIST, even if it were an option, because that service does not accommodate non-folding, electric wheelchairs.

dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.  DISCUSSION

### A.  Private Right of Action

Title III of the ADA authorizes suits by two classes of private persons: (i) "any person who is being subjected to discrimination on the basis of disability in violation of [Title III]" and (ii) "any person…who has reasonable grounds for believing that such person is *about to be* subjected to discrimination in violation of section 12183 of this title." 42 U.S.C. § 12188(a)(1) (emphasis added). In other words, any person who has been or is being subjected to discrimination on the basis of disability may sue under any provision of Title III, but a person who is "about to be subjected" to discrimination may *only* sue for discrimination under section 12183, which concerns the design, construction or alteration of commercial facilities. *Id*.

Here, plaintiffs allege that they have been and are being subjected to discrimination[2] because they are denied access to Uber's service for routine activities, such as attending doctor's appointments or civic engagement events, and running errands. They have not downloaded or attempted to use the Uber app because they have "personal knowledge" that UberWAV is not available in New Orleans and "chose not to engage in a process they know to be futile with Uber." SAC at 30. Defendants argue plaintiffs do not have a private right of action because their allegations cannot establish that they have experienced discrimination if they have not downloaded

---

[2] The parties agree that allegations plaintiffs are "about to be subjected" to discrimination would not be sufficient in this case, as plaintiffs are not suing for discrimination concerning the design, construction, or alteration of commercial facilities, as provided under section 12183.

the app. Plaintiffs contend it would be pointless "to bump their wheelchairs into inaccessible Uber vehicles." Plaintiffs' Memorandum in Opposition, ECF No. 100, at 11.

A person with a disability is not required to "engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). Under Ninth Circuit precedent, plaintiffs suing under Title III are not required to engage in a "futile gesture" in order to show actual injury under the ADA. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136–37 (9th Cir. 2002). The Ninth Circuit has explicitly rejected the requirement that ADA plaintiffs "personally encounter" barriers in order to sue. *See Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("It is the plaintiff's 'actual knowledge' of a barrier, rather than the sources of that knowledge, that is determinative."). This principle was discussed thoroughly in several recent cases in which Uber was a defendant. *Crawford v. Uber Techs., Inc.*, No. 17-cv-02664, 2018 WL 1116725, at *2 (N.D. Cal. Mar. 1, 2018); *O'Hanlon v. Uber Techs., Inc.*, No. 19-cv-00675, 2019 WL 5895425, at *5 (W.D. Pa. Nov. 12, 2019) ("[A]n individual's standing to bring a claim for disability discrimination under the ADA is not dependent on his/her undertaking futile gestures…such plaintiffs have their own standing; their deterrence-based injury is actual, cognizable and their own."); *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 351 F. Supp. 3d 1141, 1150 (N.D. Ill. 2018) ("Garcia and Cooper did not have to download the app and request an Uber ride to be injured. They saw the app, learned of the lack of wheelchair-accessible rides, and want to use the app in the future but reasonably believe they cannot. That is sufficient."); *Ramos v. Uber Techs., Inc.*, No. 14-cv-00502, 2015 WL 758087, at *7 (W.D. Tx. Feb. 20, 2015) ("[A]n ADA plaintiff need not request services as long as they have actual notice that they would be denied services or treated in a discriminatory manner and they are being deterred from attempting to obtain the services by such knowledge.").

Plaintiffs have sufficiently alleged past and present discrimination; they need not engage in the "futile gesture" of downloading the Uber app to confirm they cannot use it. Namisnak and Falls have pled actual knowledge that the Uber app in New Orleans does not have a mechanism

for summoning a WAV vehicle. They have stated they "want to use Uber's transportation system, but have been deterred because they know that if they tried, they would not be able to call a WAV." SAC at 9, 22, 28–30. They have also pled that "they plan to use Uber if and when it becomes accessible for persons with motorized wheelchairs in New Orleans." *Id.* at 10. At the pleading stage, plaintiffs are not required to do more than they already have in order to demonstrate past and present discrimination.

### B. Failure to Provide Reasonable Modifications

Defendants also argue plaintiffs have failed to allege plausibly they were denied "reasonable modifications" as defined by Title III of the ADA. Section 12184 of Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of specified public transportation services." 42 U.S.C. § 12184(a). Under this section, discrimination includes, inter alia, failure to make reasonable modifications consistent with section 12182(b)(2)(A)(ii). *Id.* § 12184(b)(2)(A). To prevail under section 12182(b)(2)(A)(ii), the plaintiff must show the defendant failed to make a "requested reasonable modification…necessary to accommodate the plaintiff's disability." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)).

Plaintiffs here contend they requested reasonable modifications in a September 2018 letter. *See* Exhibit E, SAC, ECF No. 92-5. In that letter, they asked Uber to "utilize its resources, internal knowledge, and business know-how to change its operational policies and provide WAV service in New Orleans." *Id.* The letter further communicated plaintiffs' expectation that Uber would, within seven days of receiving it, "begin providing WAV service in New Orleans" and "ensure that a fleet of approximately 30–60 WAV vehicles are available in New Orleans" such that "any UberWAV service Uber provides in New Orleans meet the equivalency standard of 49 C.F.R. § 37.105." *Id.* The letter conceded that plaintiffs "cannot tell Uber how it must change its internal business practices and operations to provide WAV service in New Orleans," because "[t]he ADA does not require [plaintiffs]…to tell Uber how to run its business." *Id.* After a year-long stay in this case, Uber responded to the letter in November 2019, explaining its belief that Uber has no

affirmative obligation to provide accessible rides, but it is nevertheless "voluntarily" experimenting with UberWAV in "pilot markets." *See* Exhibit A, Defendants' Motion to Dismiss, ECF No. 98-1.[3] Instead of making plaintiffs' requested modifications, the response letter referred them to five alternative WAV service providers in the New Orleans area. *Id.* Uber still does not provide UberWAV in New Orleans.

Plaintiffs must demonstrate both that they requested modifications, and that those requests were reasonable. In *Karczewski v. DCH Mission Valley*, 862 F.3d at 1006, the Ninth Circuit held a requested modification could not be deemed unreasonable for purposes of a motion to dismiss because, at this stage, a plaintiff's plausible allegations must be credited as true, *id.* at 1011. Plaintiffs in *Karczewski* were requesting a car dealership install hand controls in some of its vehicles so mobility-limited potential buyers could test drive them. *Id.* at 1008. Defendants identified several potential challenges which, they argued, made the requested modification difficult, expensive, and unreasonable to implement. *Id.* at 1011. The Ninth Circuit found that, even if plaintiffs' request was revealed to be unreasonable at the summary judgment stage, it could not be deemed so at the motion to dismiss stage because the necessary facts had yet to be developed. *Id.* (citing *Fortyune*, 364 F.3d at 1083 ("[W]hether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.")).

Similarly, in the present case, plaintiffs' plausible allegations, taken as true, establish their requested modifications are not unreasonable. Plaintiffs have presented evidence that Uber provides UberWAV services in other cities, using UberWAV fleets larger than what they requested in New Orleans. They have pled that Uber can modify its app to provide additional

---

[3] Uber's response letter is attached to the SAC. Matters outside the pleadings are usually inadmissible for the purposes of deciding a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). However, because the response letter's authenticity is not contested, and because the SAC "necessarily relies" on it—the back-and-forth letters form the basis for plaintiffs' "reasonable modification" theory—it may be considered. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

services—as it has done with UberPUPPIES and UberDONUTS—in far less time than the almost three years since this case was filed. Furthermore, they have pled that Uber contracted with companies in some cities, and paid them support fees, in order to provide UberWAV in those markets. In other cities, Uber has advertised directly to drivers and incentivized them to provide UberWAV service. While the reasonableness of plaintiffs' requested modifications may be challenged at a later stage, for purposes of a motion to dismiss, their allegations are plausible and must be taken as true. They establish Uber could reasonably assemble a fleet of WAVs in New Orleans and modify its app to provide UberWAV.

In Uber's response letter, the company referred plaintiffs to other WAV providers in New Orleans. Defendants argue this response was reasonable as a matter of law. A covered entity may refer a disabled individual to another entity when the individual seeks "services outside of the referring [entity]'s area of specialization." 28 C.F.R. § 36.302(b)(1). The regulation provides an example: a doctor who specializes in a certain practice area may refer a disabled patient seeking treatment in another practice area to a doctor who specializes thereto without running afoul of the ADA, if the referring doctor would do the same for a non-disabled patient. 28 C.F.R. § 36.302(b)(2). That is, for example, a cardiologist can refer a disabled patient with a broken arm to an orthopedist, just as she would a non-disabled patient. Defendants, however, refer plaintiffs to other transportation providers not because they would do the same for non-disabled riders, but because they simply do not want to accept the logistical and financial cost of serving them. A cardiologist may not send a disabled patient with a heart murmur to an orthopedist, and Uber cannot refer plaintiffs to other transportation companies. Put differently, Uber's claim that it is "not a transportation company" strains credulity, given the company *advertises itself* as a "transportation system." *See* SAC at 7–8. Plaintiffs are simply asking Uber to provide a service similar or identical to one *it already provides*: UberWAV. UberWAV cannot, by definition, lie outside the company's "area of specialization."

Moreover, defendants' fixation on their alleged non-obligation to provide "equivalent

service" is misplaced.[4] Sections 12184(b)(3) and (b)(5) of Title III provide that vehicles purchased or leased for "specific public transportation" systems must be "readily accessible to or usable by individuals with disabilities, including individuals who use wheelchairs," unless the provider "can demonstrate that the [transportation] system…when viewed in its entirety, provides a level of service…equivalent to the level of service provided to the general public." 42 U.S.C. § 12184(b)(3); 42 U.S.C. § 12184(b)(5); 49 C.F.R. § 37.103. Defendants point out they do not themselves purchase or lease vehicles, and thus argue the "equivalent service" requirement does not apply to them. However, they have "not pointed to anything suggesting that an entity must own or lease vehicles to be subject to section 12184." *Access Living*, 351 F. Supp. at 1159. Their citations to *Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006), and *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 65 (2d Cir. 2012), are misguided; not only are those cases not binding authority, but they also did not even consider claims presented under section 12184(b)(2). Put differently, even if defendants were correct that they are not subject to sections 12184(b)(3) and (5), they have not presented any evidence that they would not be subject to section 12184(b)(2), as discussed above. As was held in a related case, "Uber's fixation on whether WAVs are specifically required by statute is unavailing in light of the broad language of the ADA." *Crawford*, 2018 WL 1116725, at *4. "A covered entity under Section 12184 is subject not just to the narrow requirements associated with the purchase of new vehicles, but the statute's broader anti-discrimination mandate." *Id.*

**C. Failure to Provide Auxiliary Aids**

Defendants next argue plaintiffs have failed to allege plausibly a failure to provide auxiliary aids. Section 12184 requires covered entities to "provide auxiliary aids and services," 42 U.S.C. § 12184(b)(2)(B), to disabled individuals, unless doing so would "fundamentally alter" the nature of the provided service or "result in an undue burden," *id.* § 12182(b)(2)(A)(iii). Plaintiffs

---

[4] Defendants argue in their reply brief that plaintiffs have forfeited their claim to equivalent service by failing to address it in the response brief. Plaintiffs, however, do address the "equivalent service" issue. *See* Plaintiffs' Memorandum in Opposition, ECF No. 100, at 14 n.78.

allege UberWAV is an "auxiliary aid or service" which defendants were obligated to, and did not, provide. Defendants argue instead that this provision of the ADA is only intended to protect the hearing and vision impaired—a group into which plaintiffs do not fall. In support of their position, defendants cite a Department of Justice rule which expressly excludes individuals with mobility impairments from the "auxiliary aids and services" provisions of the ADA. *See* 56 Fed. Reg. 35,544-01, 35,566 (July 26, 1991) ("DOJ Rule").

The DOJ Rule was issued after a notice-and-comment process and thus is owed *Chevron* deference. *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If congressional intent is not clear, the court must determine at step two "whether the agency's answer is based on a *permissible* construction of the statute." *Id.* at 843 (emphasis added). The agency's interpretation must be deferred to unless it is unreasonable. *Id.* at 845.

At step one, the first guide to Congress's intent is the text of the statute. The ADA reads, in relevant part:

> The term "auxiliary aids and services" includes—
> (A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments;
> (B) qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments;
> (C) acquisition or modification of equipment or devices; and
> (D) other similar services and actions.

42 U.S.C. § 12103(1).

In interpreting this text, each party offers a canon of statutory interpretation. Plaintiffs employ the rule against surplusage, which they say dictates that, if subpart (A) governs individuals with hearing impairments, and (B) those with visual impairments, then (C) and (D) must be about other disabled individuals, such as those with limited mobility, or they would be duplicative of (A)

and (B). Defendants bring *noscitur a sociis* to the table, which they say requires subparts (C) and (D) to be interpreted in the context of the accompanying words, i.e. subparts (A) and (B), which limit the scope to individuals with hearing and visual impairments. Put differently, plaintiffs argue each subpart covers a *type* of disability; defendants assign each subpart to a *means* of accommodating disability. These statutory interpretations are equally reasonable. Substantive disagreements aside, then, these competing conclusions evince merely that the text is ambiguous.

While other parts of the ADA—including section 12184(b)(2)(A), which covers "reasonable modifications," as discussed above—contemplate accommodations which must be provided to those with mobility impairments, they do not foreclose that section 12184(b)(2)(B), which covers "auxiliary aids and services," does so as well. Section 12184(b)(2)(A) is not explicitly or exclusively about individuals with mobility impairments. It could conceivably encompass the "reasonable modifications" necessary to accommodate those with hearing and visual impairments as well. Neither party has cited any statutory text, legislative history, or caselaw to the contrary. Therefore, section 12184(b)(2)(B) may be similarly wide-reaching.

The legislative history cited by plaintiffs also does not provide clarity. The Ninth Circuit allows legislative history to be consulted "cautiously" at step one of *Chevron* analysis but precludes its use to "enforce a principle…that has no statutory reference point." *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055, 1063 n.1 (9th Cir. 2016) (internal citations and quotations omitted). One cited portion of the legislative history indicates section 12184(b), generally, applies to individuals with mobility impairments. H.R. Rep. No. 101-336, at 401 (1990). It does not, however, specifically discuss the "auxiliary aids and services" requirement. Another cited provision clarifies that the examples provided in section 12103(1) are just examples, not an exhaustive list of "auxiliary aids and services." *Id.* at 161. Again, however, that does not clarify how far past the list the term does extend. The final cited provision is perhaps plaintiffs' best case: it uses the example of how a bookstore must be made accessible to wheelchair-bound individuals in the context of defining "auxiliary aids and services." *Id.* at 161–62. However, even this piece of history does not go so far as to state affirmatively that "auxiliary

aids and services" are not limited to hearing- and vision-impaired individuals. It is hardly "clear evidence" which "illuminate[s] ambiguous text." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011). *See also Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) (declining to follow legislative history which was "ambiguous at best"). Thus, congressional intent is not clear.

Moving on to *Chevron* step two, the DOJ Rule must be deferred to unless it is unreasonable. The Rule clearly provides that the provisions of the ADA encompassing "auxiliary aids and services" do not apply to individuals with mobility impairments because they are covered by other parts of the ADA, such as reasonable modifications. *See* DOJ Rule. Because the ADA requires "auxiliary aids and services" to be offered proactively, while "reasonable modifications" must be requested, plaintiffs point out the DOJ Rule creates two types of disabilities: those that must be affirmatively accommodated (hearing and vision impairments), and those that need not be accommodated absent a request (all other disabilities). While this system may not be what plaintiffs prefer, "or even the reading the court would have reached if the question initially had arisen in a judicial proceeding," *Chevron*, 467 U.S. at 843 n.11, plaintiffs have not explained how it is unreasonable. The DOJ might reasonably have considered, for example, that those who suffer from hearing and vision impairments may have more difficulty even communicating their need for an accommodation than those with other disabilities. It seems the DOJ simply chose "among competing reasonable interpretations" of the ADA. *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2708 (2015). The courts have no authority to second-guess it. Thus plaintiffs, as a matter of law, cannot plausibly allege an "auxiliary aids and services" claim.

Finally, defendants argue plaintiffs have failed to allege plausibly a failure to remove barriers, 42 U.S.C. § 12184(b)(2)(C), or a failure to communicate, 49 C.F.R. § 37.167(f). Plaintiffs did not respond to those arguments. Furthermore, when defendants' reply indicated they considered plaintiffs' nonresponses to amount to forfeiture of the arguments, plaintiffs did not move to clarify if they did not intend to do so. Plaintiffs' theories regarding failure to remove barriers and failure to communicate are therefore dismissed. *See Ardente, Inc. v. Shanley*, No. 07-cv-04479, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this

argument and therefore concedes it through silence.").

## V.  CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. Plaintiffs have plausibly alleged a private right of action and a requested reasonable modification. However, they cannot plausibly allege a failure to provide auxiliary aids and have failed to respond to defendants' arguments regarding a failure to remove barriers or to communicate. Those theories are therefore dismissed with prejudice. With these modifications, the SAC shall proceed as the operative complaint.

**IT IS SO ORDERED**.

Dated: March 12, 2020

_____
RICHARD SEEBORG
United States District Judge