| | |
|---|---|
| William Most (CA # 279100)<br>AQUA TERRA AERIS LAW GROUP<br>828 San Pablo Ave., Ste. 115B<br>Albany, CA 94706<br>T: (504) 509-5023<br>williammost@gmail.com<br><br>Garret S. DeReus (LA # 35105)<br>Admission *pro hac vice*<br>Andrew D. Bizer (LA # 30396)<br>Admission *pro hac vice*<br>BIZER & DEREUS, LLC<br>3319 St. Claude Ave.<br>New Orleans, LA 70117<br>T: 504-619-9999; F: 504-948-9996<br>gdereus@bizerlaw.com<br>andrew@bizerlaw.com<br><br>Karla A. Gilbride<br>Public Justice, P.C.<br>1620 L Street, N.W., Suite 630<br>Washington, DC 20036<br>202-861-5241<br>Fax: 202-232-7203<br>Email: kgilbride@publicjustice.net<br><br>*Attorneys for Plaintiffs* | MORGAN, LEWIS & BOCKIUS LLP<br>Anne Marie Estevez (*pro hac vice*)<br>200 Biscayne Boulevard, Suite 5300<br>Miami, FL 33131<br>T:  305.415.3000<br>F:  305.415.3001<br>annemarie.estevez@morganlewis.com<br><br>Stephanie Schuster (*pro hac vice*)<br>Patrick Harvey (*pro hac vice*)<br>Clara Kollm (*pro hac vice*)<br>1111 Pennsylvania Avenue, NW<br>Washington, DC  20004<br>T:  202.739.3000<br>F:  202.739.3001<br>stephanie.schuster@morganlewis.com<br>patrick.harvey@morganlewis.com.<br>clara.kollm@morganlewis.com<br><br>Kathy H. Gao (CA Bar No. 259019)<br>300 South Grand Avenue, 22nd Floor<br>Los Angeles, CA 90071<br>T: 213.612.2500<br>F: 213.612.2501<br>kathy.gao@morganlewis.com<br><br>*Attorneys for Defendants* |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHAN NAMISNAK, *ET AL.*,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>Defendants. | Case No.: 3:17-cv-06124-RS<br><br>JOINT CASE MANAGEMENT STATEMENT AND<br><br>**[PROPOSED] ORDER**<br><br>Date: May 21, 2020<br>Time: 11:00 a.m.<br>Place: Courtroom 3 – 17th Floor |

**JOINT CASE MANAGEMENT STATEMENT**

Pursuant to Local Rule 16-9, and the Court's Standing Orders, Plaintiffs Stephan Namisnak and Francis Falls ("Plaintiffs"), and Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC ("Rasier," and together with Uber, "Defendants") (collectively, "Parties"), through counsel, submit this Joint Initial Case Management Statement. The parties have met and conferred concerning the subjects identified in Federal Rule of Civil Procedure 26(f) and in the Standing Order for All Judges of the Northern District of California on the Contents of Joint Case Management Statement. This Joint Case Management Statement reflects the positions of each party as to the sections or subsections so attributed, and reflects the agreed position of all parties only insofar as not otherwise attributed.

**1.     Jurisdiction and Service.** All Defendants have been served with Plaintiffs' Complaint. In the Complaint, Plaintiffs assert that this Court has original jurisdiction over their claim under the Americans with Disabilities Act pursuant to 28 U.S.C. §§ 1331 and 1343. Defendants have challenged and continued to challenge the Court's subject-matter jurisdiction on the ground that Plaintiffs lacks standing.

**2.     Facts**

**Plaintiffs' Statement.** Plaintiffs Stephan Namisnak and Francis Falls are residents of New Orleans, Louisiana. Each uses a motorized wheelchair for mobility that cannot be folded into the trunk of a car. Each is disabled within the meaning of the ADA. Plaintiffs bring this action because Uber Technologies, Inc. and Rasier, LLC have failed to make their transportation system accessible for persons who use motorized wheelchairs in New Orleans, Louisiana.

Uber operates a transportation system by which people can use their smartphone to call for a car to transport them. In many cities, Uber offers a program called UberWAV, which allows a person with a disability to obtain a driver with a wheelchair-accessible vehicle ("WAV"). Uber also offers short-term promotions that allow app users to order special sale items by clicking on an icon that appears in the user's app for the duration of the promotion.

But Uber does not offer its UberWAV service in New Orleans, Louisiana. As a result, persons with disabilities in New Orleans have no ability to call a WAV. Plaintiffs use wheelchairs to get from place to place. Plaintiffs want to use Uber's transportation system, but have been deterred because they know that if they tried, they would not be able to call a WAV. They plan to use Uber if and when it becomes accessible for persons with motorized wheelchairs in New Orleans. Plaintiffs allege that they have already been subjected to discrimination by Uber.

To prevail on their claim, Plaintiffs "must demonstrate both that they requested modifications, and that those requests were reasonable." [R. Doc. 102, p. 6]. On September 22, 2018, Plaintiffs sent Uber a letter. In their letter, they wrote:

> Mr. Falls and Mr. Namisnak hereby request that Uber Technologies, Inc. and Rasier, LLC cease violating the ADA and utilize its resources, internal knowledge, and business know-how to change its operational policies and provide WAV service in New Orleans, Louisiana and its surrounding areas.[1]

Plaintiffs went on to say that they "expected" Uber would provide WAV service in New Orleans, including a fleet of approximately 30 to 60 WAV vehicles. Uber rejected Plaintiff's request. More than one year later, in a letter dated November 13, 2019, Uber indicated it would not be providing its UberWAV program in New Orleans, and told Plaintiffs to try other companies. As of today, Uber provides no access to WAVs whatsoever in New Orleans. Uber can modify its app to provide additional services—as it has done with UberPUPPIES and UberDONUTS—in far less time than the almost three years since this case was filed. Furthermore, they have pled that Uber contracted with companies in some cities, and paid them support fees, in order to provide UberWAV in those markets.

Without waiving any factual issues or limiting themselves, the principal disputed factual issues Plaintiffs foresee are: is Uber operating a demand responsive transportation system (mixed legal/factual issue); what steps has Uber taken in other markets to make WAV service accessible; the ease through which Uber could modify its application to provide WAV service; what steps could Uber take related to New Orleans to get WAVs on the road through contracts, support fees,

---

[1] Rec. Doc. 92-5 at p. 3.

or incentive programs; what steps did Uber take to provide Plaintiffs' requested reasonable modification; the extent to which Uber must make its service accessible (equivalency or something less than equivalency); what factual support exists for Uber's affirmative defenses.

**Defendants' Statement.** Uber is a technology company that creates and runs several successful smartphone applications. This case concerns a pair of Uber's applications used by participants in the ridesharing industry—the Uber Driver App and the Uber Rider App (the "Uber Apps"). Via contract, the Uber Driver App is licensed for use, subject to various terms and conditions, by independent, third-party transportation providers ("Drivers") looking to provide rides, or delivery food and/or packages for profit. Via a different contract, the Uber Rider App is licensed for use, subject to various terms and conditions, by individuals looking to hire a private driver, book a taxi, rent an electric scooter or bicycle, send packages, or secure public transit tickets ("Riders"). The Uber Rider App is integrated with another of Uber's technologies—the UberEats application—through which registered Riders can order food for pick-up or delivery from local restaurants.

When it comes to ridesharing, Drivers and Riders use the Uber Apps to network with one another, to provide reviews and feedback, and to facilitate payments for the rides Drivers provide. Drivers are not employees of either Defendant or any entity affiliated with them. Drivers are independent contractors. Defendants do not own or lease Drivers' vehicles.

Plaintiffs are not Riders. They have never used the Uber Rider App to request rides from Drivers or order food from local restaurants. They have never signed up for Uber accounts or even downloaded the Uber Rider App. Plaintiffs allege they will not do any of those things until (i) the Uber Rider App in New Orleans includes an option to specifically request rides from Drivers who have chosen to provide rides in wheelchair-accessible vehicles ("WAVs"), (ii) Defendants have guaranteed that there are 30–60 WAVs operated by Drivers in New Orleans who have chosen to use the Uber Driver App to seek and accept ride requests, and chosen to use their WAVs to provide rides requested, and (iii) until the service provided by such hypothetical Drivers with WAVs is equivalent in various respects, including response times, to the service provided by Drivers who provide rides to Riders in other types of vehicles.

In a handful of major U.S. cities, like Chicago, New York City, Philadelphia, and Washington, DC, Uber continues to experiment with a "WAV" option in the Uber Apps. Uber has undertaken this WAV pilot program to test and study techniques for encouraging both demand for WAV rides and, critically, a supply of willing Drivers who have or choose to obtain WAVs and then choose to use them to seek and accept ride requests via the Uber Apps. Uber is committed to identifying ways to make the WAV option a viable one before expanding the current pilot program to other cities. Uber has not yet enabled a WAV option in the Uber Apps in New Orleans.

Defendants dispute that all of the issues identified by Plaintiffs are disputed issues of fact that are relevant to this case. For their part, without waiving any arguments or otherwise limiting themselves, Defendants assert that, at this early stage of the litigation, the disputed factual issues may include, but are not necessarily limited to, the following:

- whether Plaintiffs require WAVs for transportation;
- whether Plaintiffs use WAVs for transportation in and around New Orleans;
- the reason(s) Plaintiffs have not used or downloaded the Uber Rider App;
- whether and for what purpose(s) Plaintiffs intend to use the Uber Rider App in the future;
- the demand for WAVs in New Orleans and its surrounding areas;
- the supply of individuals who possess or intend to possess WAVs, whether any such supply intends to make their WAVs available via any ridesharing technology, if so whether any such intent is to choose Uber's technology on which to make their WAVs available, and if so, what days, what hours, and where in and around New Orleans;
- Plaintiffs' use of transportation services in and around New Orleans;
- whether Plaintiffs have the equipment and resources necessary to use the Uber Ride App;
- whether Defendants' business model can accommodate the relief requested; and
- the financial, administrative, and practical challenges associated with the relief requested.

### 3. Legal Issues

**Plaintiffs' Statement.** Without waiving any legal issues/theories or limiting themselves, the major legal issues Plaintiffs foresee are:

- Whether Uber has violated Section 12184(a), which provides a general rule that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.

- Whether Uber is operating a demand responsive transportation system under 42 U.S.C. § 12181(3).
- Whether, as a result of the control Uber asserts over its drivers, Uber is providing a service under contract pursuant to 49 C.F.R. §37.23(d).
- Whether Uber has committed discrimination "against an individual with a disability in connection with the provision of transportation service", in violation of 49 C.F.R. § 37.5(a).
- Whether Uber is in the business of "transporting people."
- Whether Uber has committed denial of participation, in violation of 42 U.S.C. § 12182(b)(1)(A)(i).
- Whether Uber has failed to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. § 12182 (b)(2)(A)(ii).
- Whether Uber is obligated to comply with the equivalent service standard, 42 U.S.C. § 12182(b)(2)(C)(i), and if so, what it must do to comply with this requirement.
- Per this Court's order (R. Doc. 102), Plaintiffs' legal issues do not include a failure to provide auxiliary aids or a failure to remove barriers or to communicate.

**Defendants' Statement.** Defendant disputes that many of the points of law identified by Plaintiffs ever were or are relevant to this case. In particular, Plaintiffs assert that disputed legal issues include whether Uber has violated 42 U.S.C. § 12182(b)(1)(A)(i) & (b)(2)(C)(i). None of these theories of liability is alleged in the operative complaint. Indeed, this Court has dismissed Plaintiffs' claims under 42 U.S.C. § 12182. Plaintiffs' sole remaining claim is for violation of 42 U.S.C. § 12184, and while that statute incorporates certain provisions of 42 U.S.C. § 12182, it does not incorporate 42 U.S.C. § 12182(b)(1)(A)(i) or (b)(2)(C)(i). *See* 42 U.S.C. § 12184(b)(2) (prohibiting the failure to make reasonable modifications, provide auxiliary aids, and remove barriers "consistent with the requirements" of 42 U.S.C. § 12182(b)(2)(A)(ii)–(iv)).

In all events, Plaintiffs' unpleaded theories of liability in support of their already dismissed claim under 42 U.S.C. § 12182 plainly are without merit. Section 12182(b)(1)(A)(i) may be invoked only by "clients or customers of the covered" entity, and Plaintiffs are admittedly neither clients nor customers of Defendants. 42 U.S.C. § 12182(b)(1)(A)(iv); *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 678–79 (2001). Section 12182(b)(2)(C)(i) does not apply to Defendants under the theory of liability Plaintiffs have actually pleaded because that provision applies only to "a private entity which operates a demand responsive system *and which is not subject to section*

*12184 of this title*," 42 U.S.C. § 12182(b) (emphasis added), and Plaintiffs' sole theory of liability in this case is that Defendants *are subject to Section 12184*.

For their part, without waiving any arguments or otherwise limiting themselves, Defendants assert that, at this stage of the litigation, the disputed legal issues may include, but are not necessarily limited to, the following:

- whether Plaintiffs have Article III standing;
- whether Plaintiffs are individuals with a "disability" under 42 U.S.C. § 12102(4)whether Uber or Rasier is "primarily engaged in the business of transporting people" within the meaning of 42 U.S.C. § 12184(a);
- whether Uber or Rasier provides "specified public transportation services" within the meaning of 42 U.S.C. § 12184(a);
- whether 42 U.S.C. § 12184 requires covered entities that do not acquire new, inaccessible vans to provide or otherwise guarantee any WAV service and/or equivalent service;
- whether Plaintiffs seek and can obtain a mandatory injunction that complies with the requirements of Federal Rule of Civil Procedure 65(d) and otherwise comports with due process;
- whether Plaintiffs can demonstrate they have a private right of action under 42 U.S.C. § 12188(a)(1);
- whether the modifications Plaintiffs requested from Defendants are necessary and reasonable under 42 U.S.C. § 12184(b)(2)(A); 42 U.S.C. 12182(b)(2)(A)(ii);
- whether the modifications Plaintiffs requested from Defendants would require Defendants to fundamentally alter their business and/or the services they provide under 42 U.S.C. § 12184(b)(2)(A); 42 U.S.C. 12182(b)(2)(A)(ii); and
- whether, in addition to success on the merits, Plaintiffs can demonstrate the other requirements necessary for injunctive relief, including but not limited to, proof that they have suffered an irreparable injury*, See e.g.*, *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019); *Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850 (9th Cir. 2001)

**4.     Motions**.

    **a.     Past Motions.**

On January 23, 2018, Defendants filed a motion to compel arbitration. R. Doc. 26. On April 13, 2018, the Court denied the motion as to Plaintiffs Stephen Namisnak and Francis Falls, but granted the motion as to Mitchell Miraglia. R. Doc. 49.

On May 7, 2018, the Court granted a consent motion to file a First Amended Complaint (R. Doc. 53), which was filed on May 8, 2018 (R. Doc. 54).

On May 22, 2018, Defendants filed a motion to dismiss the First Amended Complaint. R. Doc. 60. On October 3, 2018, the Court granted in part and denied in part the motion to dismiss. R. Doc. 84.

On October 11, 2018, Plaintiffs filed a Second Amended Complaint. R. Doc. 86.

On November 5, 2018, per a stipulation of the parties, the Court ordered that the case be stayed for one year. R. Doc. 94.

On December 17, 2019, Defendants filed a motion to dismiss the Second Amended Complaint. R. Doc. 98.  On March 13, 2020, the Court granted in part and denied in part the motion to dismiss. R. Doc. 102.

On March 27, 2020, Defendants filed an Answer. R. Doc. 105.

The Court has also ruled on a number of administrative motions, stipulations to change time, and motions to appear *pro hac vice*.

  **a.**  **Pending Motions.**  None.

  **b.**  **Anticipated Motions.**

At this stage, both parties anticipate filing motions for summary judgment.

**5.**  **Amendment of Pleadings.**  Neither party intends to amend any pleading at this time.

**6.**  **Evidence Preservation.**  The parties certify that, through their respective counsel, they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.**  **Disclosures.**  The Parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on April 16, 2018. Plaintiffs supplemented their initial disclosures on April 18, 2018.

**8.**  **Discovery.**

  **a.**  **Discovery Orders.**

A Stipulation to Consolidate Fact Discovery and Enter Protective Order in Related Cases

[R. Doc. 66] has been filed in this case. The Court approved the stipulation on July 17, 2018 in the related case *Crawford, et al. v. Uber Technologies, Inc., et al.*, No. 3:17-cv-02664-RS [R. Doc. 107]. The Protective Order includes an Order entered pursuant to Federal Rule of Evidence 502(d). R. Doc. 66-3 at § 12.3

### b.  Discovery Taken.

In the related *Crawford* case, on November 7, 2017, Plaintiffs propounded one set of requests for production and one set of interrogatories upon Defendants. On December 7, 2017, Defendants provided written responses and objections to Plaintiffs requests for production and interrogatories. Plaintiffs served a First Set of Request for the Production of Documents on May 7, 2020.

### c.  Scope of Anticipated Discovery.

**Plaintiffs' statement.** Based on an initial assessment, and without waiving any legal issues/theories, the scope of Plaintiffs' anticipated discovery may include:

- All facts related to whether Uber is operating a demand responsive transportation system;
- The degree of control Uber is asserting over the individuals who utilize the UberApp to provide transportation services;
- The facts related to the exclusion and denial of access Plaintiffs have experienced;
- The steps Uber has taken (and could take) to increase accessibility in New Orleans, Louisiana (if any);
- The steps Uber has taken to increase accessibility in other markets;
- The steps that could be taken to bring Uber's services into compliance with the ADA in New Orleans, LA;
- What accessibility plans Uber had before it entered the New Orleans, Louisiana market;
- What steps Uber could take related to New Orleans to get WAVs on the road through contracts, support fees, or incentive programs;
- What steps Uber has taken to provide Plaintiffs' requested reasonable modification;
- What factual support exists for Uber's affirmative defenses.

**Defendants' statement.** Defendants do not agree that all of the areas of inquiry identified by Plaintiffs are relevant or proper. For their part, without waiving any arguments or otherwise limiting themselves, Defendants assert that, at this early stage of the litigation, the scope of

discovery may include the following:

- Defendants' actions in certain cities to pilot a WAV option in the Uber Apps;
- demand for WAV service in New Orleans, Louisiana;
- The supply of individuals who possess or intend to possess WAVs, whether any such supply intends to make their WAVs available via any ridesharing technology, if so whether any such intent is to choose Uber's technology on which to make their WAVs available, and if so, what days, what hours, and where in and around New Orleans;
- WAV transportation options currently available in New Orleans;
- Plaintiffs' allegations of having been deterred from downloading, signing up for, and using the Uber Rider App;
- WAV supply and the costs to Drivers of acquiring, maintaining, and operating WAVs;
- Plaintiffs' allegations of desiring to use the Uber Rider App in the future;
- Plaintiffs' transportation habits, patterns, preferences, and needs;
- Plaintiffs' access to technology and/or equipment necessary to use the Uber App;
- Whether Plaintiffs use a smartphone application offered by one of Uber's competitors (*e.g.*, Lyft);
- the impact Plaintiffs' requested modification to Defendants' policies, practices, or procedures will have on Defendants' business and the services they provide.

### d.   Discovery Disputes.

At present, there are no discovery disputes.

**9.**   **Class Actions.**  Not applicable.

**10.**   **Related Cases.**   On Plaintiffs' motion, this Court has deemed this action and the action styled *Crawford, et al. v. Uber Technologies, Inc., et al.*, No. 3:17-cv-02664-RS. [R. Doc. 23] to be related.

**11.**   **Relief.**

**Plaintiffs' Statement.** Plaintiffs seek the following relief:  that this Court declare that Defendants' policies, procedures, and services have been provided in a discriminatory manner which violates the ADA; that this Court Order injunctive relief to require Defendants to bring their transportation service into compliance and remain in compliance with the ADA; that this Court award reasonable attorneys' fees and costs (including expert fees) and other expenses of suit; and that this Court award such other and further relief as it deems necessary, just, proper, and

appropriate.

**Defendants' Statement.** Defendants dispute that Plaintiffs are entitled to any relief.

12. **Settlement and ADR.** The parties have participated confidential settlement discussions including but not limited to the mandatory mediation required by General Order No. 56. As a result of that mediation, the parties agreed to stay the case for one year in an effort to facilitate settlement, but no settlement was reached prior to the conclusion of the stay. The parties do not currently believe that prospects for settlement are high, or that this case would benefit from being referred to another ADR process. However, the parties agree to continue to re-assess the benefits of another ADR process as this litigation continues.

13. **Consent to Magistrate Judge.** All parties do not consent to have a magistrate judge conduct all further proceedings.

14. **Other References.** Uber contends that Plaintiffs' claims should be referred to arbitration pursuant to Uber's Terms of Use. *See* R. Doc. 26. The parties do not believe at this time this matter would be suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

15. **Narrowing of Issues.** The parties agree that any narrowing of issues will be determined by discovery and/or by dispositive motion.

16. **Expedited Trial Procedure.** Neither side believes that this case is appropriate for an expedited trial procedure.

17. **Scheduling.** The Parties agree that fact and expert discovery should be synchronized with the related *Crawford* case with the following schedule:

| Event | Deadline |
|---|---|
| Fact Discovery cutoff | December 18, 2020 |
| Deadline for Plaintiffs to designate experts in accordance with Federal Rule of Civil Procedure 26(a)(2) | January 18, 2021 |
| Deadline for Uber to designate experts in accordance with Federal Rule of Civil Procedure 26(a)(2) | February 18, 2021 |
| Deadline for all discovery of expert witnesses pursuant to Federal Rule of Civil Procedure 26(b)(4) shall be completed. | March 19, 2021 |

| Deadline to file Dispositive/*Daubert* Motions | May 3, 2021 |
|---|---|
| Deadline for Oppositions to Dispositive/*Daubert* Motions | June 4, 2021 |
| Deadlines for Replies in Support of Dispositive/*Daubert* Motions | June 25, 2021 |
| Last Day to Set Hearings on Dispositive/*Daubert* Motions | July 15, 2021 |
| Pretrial Conference | September 23, 2021 |
| Bench Trial Start Date | October 11, 2021 |

**18.**   **Trial.**  This is a non-jury case. The parties currently estimate that trial will last three to five days.

**19.**   **Disclosure of Non-party Interested Entities or Persons.**  The parties have each filed a "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. *See* R. Doc 12, 28 & 35

**20.**   **Professional Conduct.**  All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct in the Northern District of California.

Dated: May 12, 2020                              Respectfully submitted,

BIZER AND DEREUS, LLC                         MORGAN, LEWIS & BOCKIUS LLP

By:   s/ Garret DeReus                         By:   s/ Anne Marie Estevez
         Garret DeReus                                     Anne Marie Estevez
         Andrew Bizer                                      Stephanie Schuster
                                                           Patrick Harvey
AQUA TERRA AERIS LAW GROUP                                 Clara Kollm
By:   s/ William Most                                      Kathy H. Gao
         William Most
                                               *Attorneys for Defendants*
PUBLIC JUSTICE, P.C.

By:   s/ Karla A. Gilbride
         Karla A. Gilbride

*Attorneys for Plaintiffs*

**LOCAL CIVIL RULE 5-1(i) Certification**

I hereby certify that concurrence in the filing of the document has been obtained from each of the other Signatories on this document.

s/ *Anne Marie Estevez*

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: _____

_____
The Honorable Richard Seeborg
United States District Judge